SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**Joel S. Lippman, M.D. v. Ethicon, Inc. and Johnson & Johnson, Inc. (A-65/66-13) (073324)**

**Argued January 20, 2015 -- Decided July 15, 2015**

**LaVECCHIA, J., writing for a unanimous Court.**

In this appeal, the Court considers whether an employee, whose job duties entail knowing or securing compliance with a relevant standard of care and knowing when an employer's actions or proposed actions deviate from that standard of care, may invoke the whistleblower protections afforded under N.J.S.A. 34:19-3 of the Conscientous Employee Protection Act (CEPA or Act), N.J.S.A. 34:19-1 to -14.

Plaintiff Joel S. Lippman, M.D., was employed by defendant Ethicon, Inc., a subsidiary of defendant Johnson & Johnson, Inc., a manufacturer of medical devices used for surgical procedures, from July 2000 until his termination in May 2006. For the majority of his employment, plaintiff served as worldwide vice president of medical affairs and chief medical officer of Ethicon. He was responsible for safety, medical reviews, and medical writing. Plaintiff served on multiple internal review boards, including a quality board that was created to assess the health risks posed by Ethicon's products and provide medical input regarding any necessary corrective measures with respect to their products in the field.

On numerous occasions, plaintiff objected to the proposed or continued sale and distribution of certain Ethicon medical products on the basis that they were medically unsafe and that their sale violated various federal and state laws and regulations. In some instances, plaintiff opined that a particular product should not go to market, should be recalled, or that further research was necessary. Although he received "push back" from executives and other members of the boards whose interest and expertise aligned with Ethicon's business priorities, Ethicon ultimately followed many of his recommendations. In April 2006, plaintiff advocated the recall of a particular product that he believed was dangerous, and it was eventually recalled in late April or early May 2006. On May 15, 2006, Ethicon terminated plaintiff's employment.

Plaintiff filed a complaint alleging, in part, that his employment was terminated due to his whistleblowing activities, which he identified as his actions in reporting a number of products as dangerous and in violation of the federal Food, Drug and Cosmetic Act, and advising that defendants either recall the products or perform further research. Ethicon asserted that plaintiff was terminated as a result of an inappropriate relationship with someone who worked in a department under his authority. The trial court granted defendants' summary judgment motion, dismissing plaintiff's CEPA action. Relying on Massarano v. New Jersey Transit, 400 N.J. Super. 474 (App. Div. 2008), the court concluded that, because plaintiff admitted it was his job to bring forth issues regarding drug and product safety, he failed to show that he performed a whistleblowing activity protected by CEPA.

Plaintiff appealed, and the Appellate Division reversed in a published decision. Lippman v. Ethicon, Inc., 432 N.J. Super. 378 (App. Div. 2013). The panel rejected the trial court's interpretation of protected whistleblowing conduct under N.J.S.A. 34:19-3(c), finding that it was inconsistent with the broad remedial purposes of CEPA. The panel noted that watchdog employees like plaintiff are the most vulnerable to retaliation because they routinely speak out when corporate profits are put ahead of consumer safety, and CEPA's definition of an eligible employee does not limit protection based on job title or function. However, when addressing the standard for establishing a prima facie CEPA claim, the panel articulated an additional requirement for watchdog employees. Specifically, unless a watchdog employee refused to participate in the objectionable employer conduct, the employee must demonstrate that he or she pursued and exhausted all internal means of securing compliance. This Court granted defendants' petition for certification and plaintiff's cross-petition. 217 N.J. 292 (2014).

**HELD:** CEPA's protections extend to the performance of regular job duties by watchdog employees. Unless and until the Legislature expresses its intent to differentiate among the classes of employees who are entitled to CEPA protection, there can be no additional burden imposed on watchdog employees seeking CEPA protection.

1. In order to determine whether plaintiff is entitled to bring a CEPA cause of action, the Court must construe CEPA's language. In addressing this question of the Act's meaning, the Court's review is de novo. CEPA is remedial legislation entitled to liberal construction, with the purposes of protecting whistleblowers from retaliation

by employers and discouraging employers from engaging in illegal or unethical workplace activities. N.J.S.A. 34:19-3 establishes the types of whistleblowing activity for which "an employer shall not take any retaliatory action against an employee." An "employee," as defined by N.J.S.A. 34:19-2(b), is "any individual who performs services for and under the control and direction of an employer for wages or other remuneration." (pp. 21-25)

2. Turning to the question of whether watchdog employees like plaintiff are entitled to CEPA protection, the Court notes that CEPA's plain language does not define employees protected by the Act as inclusive of only those with certain job functions. Moreover, New Jersey case law has extended the reach of N.J.S.A. 34:19-2(b), not restricted it. There is no support in CEPA's definition of an "employee" to preclude its protection of watchdog employees. Restricting CEPA's protection to a discrete class of employees would contravene two principles of statutory construction, namely that courts may not engraft language that the Legislature has not chosen to include in a statute and that remedial legislation should be liberally construed. (pp. 26-27)

3. The Court rejects defendants' argument that watchdog employees must be acting outside the scope of their job duties in order to engage in CEPA-protected conduct under N.J.S.A. 34:19-3(c), which requires that a plaintiff "[o]bject[] to or refuse[] to participate in any activity, policy or practice. . . ." The plain meaning of the word "object" does not support defendants' interpretation. Given that remedial legislation should be liberally construed, it would be wholly incongruent to strain the normal definition of "object" into some implicit requirement that limits a class of employee to whistleblower protection only for actions taken outside of normal job duties. This conclusion is further supported by subsection (c)'s corollary phrase "refuse[] to participate," which implies that CEPA-protected conduct can occur within the course of an employee's normal job duties. Furthermore, since neither subsection (a) nor (b) of N.J.S.A. 34:19-3 states or suggests that an employee must be acting outside of his or her usual duties to merit protection, it is inexplicable to assume that the Legislature would intend an implicit "job duties" exception excluding watchdog employees under subsection (c). (pp. 27-32)

4. To the extent that defendants and the trial court relied on Massarano v. New Jersey Transit, 400 N.J. Super. 474 (App. Div. 2008), for the proposition that watchdog employees are only entitled to CEPA protection if acting outside of the scope of their jobs, the Court finds that this argument lacks solid foundation. Although Massarano contains language suggesting that a plaintiff who reports conduct as part of his or her job is not entitled to CEPA protection, the analysis in that case is premised on the conclusion that the defendants did not retaliate against the plaintiff for reporting the disposal of documents. Thus, reliance on Massarano for recognition of a job-duties exception to CEPA's broad protection to employees misperceives the case's essential finding of no retaliation and overextends its significance. The Court specifically disapproves of any such extrapolation from the Massarano judgment. Significantly, decisions of this Court have indicated only a contrary approach to CEPA coverage for individuals in positions of responsibility for corporate compliance with law and public policy. In sum, there is no support in CEPA's language, construction, or its application in this Court's case law for the conclusion that watchdog employees are stripped of whistleblower protection due to their position or because they are performing their regular job duties. (pp. 32-35)

5. Although the Court agrees with the Appellate Division's finding that watchdog employees are entitled to CEPA protection when performing their ordinary job duties, it disagrees with the panel's reformulation of the elements required to establish a prima facie CEPA claim, as set forth in Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003). The panel's requirement that watchdog employees demonstrate pursuit and exhaustion of all internal means of securing compliance is incompatible with prior precedent and imposes an obligation nowhere found in the statutory language. Where the Legislature intended to impose an exhaustion requirement, it has said so clearly. Consequently, the Court modifies the Appellate Division judgment to the extent that it imposed an exhaustion requirement not supported by the statute's terms. CEPA imposes no additional requirements on watchdog employees bringing a CEPA claim unless and until the Legislature expresses its intent that such employees meet a special or heightened burden. (pp. 35-38)

The judgment of the Appellate Division is **AFFIRMED,** as **MODIFIED**, and the matter is **REMANDED** for further proceedings consistent with the Court's opinion.

**CHIEF JUSTICE RABNER and JUSTICES ALBIN, FERNANDEZ-VINA and SOLOMON join in JUSTICE LaVECCHIA's opinion. JUSTICE PATTERSON and JUDGE CUFF (temporarily assigned) did not participate.**

JOEL S. LIPPMAN, M.D.,

     Plaintiff-Respondent
     and Cross-Appellant,

          v.

ETHICON, INC. and JOHNSON &
JOHNSON, INC.,

     Defendants-Appellants
     and Cross-Respondents.


        Argued January 20, 2015 – Decided July 15, 2015

        On certification to the Superior Court,
        Appellate Division, whose opinion is
        reported at 432 N.J. Super. 378 (App. Div.
        2013).

        Francis X. Dee argued the cause for
        appellants and cross-plaintiffs (McElroy,
        Deutsch, Mulvaney & Carpenter, attorneys;
        Mr. Dee and Stephen F. Payerle, on the
        briefs).

        Bruce P. McMoran argued the cause for
        plaintiff and cross-appellant (McMoran,
        O'Connor & Bramley, attorneys; Mr. McMoran
        and Michael F. O'Connor, on the briefs).

        Adam N. Saravay argued the cause for amici
        curiae New Jersey Business & Industry
        Association, New Jersey Civil Justice
        Institute, Employers Association of New
        Jersey, New Jersey Defense Association and
        New Jersey Management Attorneys, Inc.
        (McCarter & English, Proskauer Rose,
        Gibbons, and Drinker Biddle & Reath,
        attorneys; Mr. Saravay, David R. Kott,
        Christopher S. Mayer, Mark A. Saloman,

Daniel L. Saperstein, Allana M. Grinshteyn, Nicholas M. Tamburri, Joseph J. Sarno, Natalie H. Mantell, Michelle M. Bufano, Michelle G. Haas, John A. Ridley, and Lawrence J. Del Rossi, of counsel and on the briefs).

Andrew W. Dwyer argued the cause for amici curiae The New Jersey Work Environment Council, The New Jersey State Industrial Union Council, and 25 other environmental, labor, consumer and community organizations, and The New Jersey Association for Justice (The Dwyer Law Firm, Law Office of Bennett D. Zurofsky, and Schiffman, Abraham, Kaufman & Ritter, attorneys; Evan L. Goldman, of counsel; Mr. Dwyer, Mr. Zurofsky, Mr. Goldman, and Kristen Welsh Ragon on the briefs).

JUSTICE LaVECCHIA delivered the opinion of the Court.

Cross-petitions for certification were granted in this matter to address issues related to the application of the Conscientious Employee Protection Act (CEPA or Act), N.J.S.A. 34:19-1 to -14, to so-called "watchdog" employees. More specifically, both petitions concern whether an employee, whose job duties entail knowing or securing compliance with a relevant standard of care and knowing when an employer's actions or proposed actions deviate from that standard of care, may invoke the whistleblower protections afforded under N.J.S.A. 34:19-3 of CEPA.

Plaintiff's normal job duties included providing his medical opinion about the safety of defendant pharmaceutical company's products. After he was terminated from his high-level

2

position with the corporation, he filed this CEPA action claiming that his employer retaliated against him. The trial court granted defendants' motion for summary judgment on the ground that plaintiff's performance of his regular job duties could not constitute CEPA-protected conduct. The Appellate Division reversed, concluding that watchdog employees are among those most in need of CEPA's protection, and that the plain language of the statute does not exempt from protection conduct that constitutes a job duty. Lippman v. Ethicon, Inc., 432 N.J. Super. 378, 406-08 (App. Div. 2013). In so holding, the panel also articulated a tailored standard for evaluating CEPA claims asserted by watchdog employees. Id. at 410.

According to plaintiff, the Appellate Division's standard, in effect, raised the bar for the proof that such employees must present in order to establish a prima facie CEPA claim because it requires demonstration that the employee either refused to participate in the objectionable conduct or pursued and exhausted all internal means of securing compliance. Plaintiff's petition focuses on whether the Appellate Division improperly added an element to his CEPA-authorized cause of action, thereby subjecting watchdog employees to a different and heightened burden compared to other CEPA plaintiffs. Defendants' petition allows this Court to review the Appellate Division's published decision holding that performance of job

3

duties by a watchdog employee may constitute CEPA-protected activity.

For the reasons that follow, we affirm the Appellate Division's judgment that CEPA's protections extend to the performance of regular job duties[1] by watchdog employees. In so holding, we disapprove of the standard that the panel articulated for assessing claims by such employees. The panel's attempt to add clarity to the assessment of claims by such plaintiffs impermissibly results in adding to the burden for this subset of CEPA plaintiffs. By its very terms, the statutory cause of action created by CEPA applies equally to all employees. There is no evidence of legislative intent to have the Act operate any other way. Accordingly, we hold that there can be no additional burden imposed on watchdog employees seeking CEPA protection, unless and until the Legislature expresses its intent to differentiate among the classes of employees who are entitled to CEPA protection.

## I.

### A.

This matter arose upon the filing of plaintiff's complaint in the Law Division against Ethicon, Inc. (Ethicon) and Johnson

---

[1] We refer to this concept in various ways -- including regular, normal, and usual job duties; prescribed duties; and core job functions -- as defendants have in this matter.

4

& Johnson, Inc. (J&J) (collectively defendants), alleging CEPA violations under N.J.S.A. 34:19-3(a) and (c). Plaintiff Joel S. Lippman, M.D.,[2] alleged in his complaint, among other claims, that his employment was terminated due to his whistleblowing activities, which plaintiff identified as his actions in reporting a number of products as dangerous and in violation of the federal Food, Drug and Cosmetic Act, 21 U.S.C.A. §§ 301-399f, and advising that defendants either recall the products or perform further research.[3] This appeal comes to us on a summary judgment record; accordingly, we review the facts in the light most favorable to plaintiff, the non-moving party in this matter. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 540 (1995). The facts are set forth below as presented by the parties and as described by the Appellate Division, Lippman, supra, 432 N.J. Super. at 382-405.

Plaintiff was employed at Ethicon, a manufacturer of medical devices used for surgical procedures, from July 2000

_____

[2] Plaintiff has a bachelor's degree in biology from New York University, a medical degree from New York Medical College, and a master's degree in public health from Harvard University School of Public Health.

[3] Plaintiff also alleged that he was terminated because of his age, in violation of the Law Against Discrimination, N.J.S.A. 10:5-12(a); however, he voluntarily dismissed that claim after the trial court granted defendants' motion for summary judgment on plaintiff's CEPA claim.

until his termination.  Prior to his work at Ethicon, he worked from 1990 to 2000 at Ortho-McNeil Pharmaceutical (OMP), as director of medical services and then vice president of clinical trials.  Both Ethicon and OMP are subsidiaries of J&J.

Initially plaintiff served at Ethicon as vice president of medical affairs.  In 2002, he was promoted to worldwide vice president of medical affairs and chief medical officer of Ethicon.  His direct superior and the person to whom he reported at Ethicon was Dennis Longstreet, the company group chairperson.  Longstreet reported to Michael J. Dormer, J&J's chairperson for the medical devices and diagnostic group.  In 2005, Sherilyn S. McCoy replaced Longstreet as Ethicon's company group chairperson.

As vice president of medical affairs, "plaintiff was 'responsible for safety, ensuring that safe medical practices occurred in clinical trials of [Ethicon's] products; . . . medical reviews, information from a medical standpoint; [and] medical writing.'"  Lippman, supra, 432 N.J. Super. at 388 (alterations in original).  Consistent with those responsibilities, plaintiff served on multiple internal review boards for Ethicon.  Generally stated, those boards addressed strategic product activities and evaluated the health and safety risks of products.  As a member of those boards, plaintiff's function was to provide medical and clinical expertise and

opinions.  Id. at 388-90.  In short, Lippman was part of Ethicon's high-level policy decision making.

Of particular relevance in this matter, plaintiff was a member of a quality board that "was created to assess the health risks posed by Ethicon's products and to provide 'medical input' in determining whether the company needed to take corrective measures with respect to their products in the field."  Id. at 389.  At times, recall of a product would become "necessary to conform to the requirements of the particular regulatory agency with jurisdiction, internal policy directives, and/or to protect the health and safety of the patient[s]."  Ibid.  The quality board could also take other types of actions, such as "correcting a product in the field."  As structured within Ethicon's organization, the quality board was to be accorded "'the final say'" in deciding whether to take corrective action regarding a product, "even in the absence of a directive from a governmental agency."  Ibid.  The quality board's membership included the head of research and development, the chief financial officer, the head of operations, and the vice president of quality and regulatory affairs.  Members of the quality board were "expected to express their view points from their" area of knowledge or expertise.  Ibid.

Plaintiff claims numerous instances in which he, in his role on the internal review boards generally, and specifically

7

the quality board, objected to the proposed or continued sale and distribution of certain Ethicon medical products.  The Appellate Division opinion recounts many in detail.  See id. at 390-403.  Those instances, as summarized, reflect that plaintiff's objections were based on his opinion that the products were medically unsafe and that their sale violated various federal and state laws and regulations.  Thus, plaintiff voiced concerns about the safety of various products and his opinion, in some instances, that the particular product under discussion should not go to market, that it should be recalled, or that further research was necessary.  Plaintiff claims, and the record contains support, that plaintiff received "push back" from other members of these boards and executives whose interest and expertise aligned with the business priorities of Ethicon. Needless to say, the committees were comprised of professionals with their own judgments and opinions on the subjects under discussion.  Certainly, in this record, factual disputes exist as to precisely what plaintiff, other board members, and executives at Ethicon said and did during these disagreements. Moreover, the record also indicates that Ethicon ultimately followed many of plaintiff's recommendations.

In April 2006, plaintiff was advocating the recall of DFK-24, a product he believed was dangerous.  Other Ethicon executives were resistant to recalling the product, but Ethicon

8

eventually did so in late April or early May 2006.  On May 15, 2006, Ethicon terminated plaintiff's employment.  According to McCoy's deposition testimony, "'Dr. Lippman was terminated because he had a relationship, an inappropriate relationship, with someone who worked directly for him.'"  Id. at 404.  Based on the record before us, "the alleged relationship came to McCoy's attention when an employee, who was unsatisfied with the performance rating he believed plaintiff had given him, mentioned [the relationship] to McCoy as a possible explanation or motive for plaintiff's alleged unfair assessment of his work performance."  Ibid.  McCoy acknowledged that plaintiff's purported romantic partner "was an employee in a department under plaintiff's authority during part of the alleged relationship, but "she did not directly report to plaintiff at any time."  Ibid.  Further, McCoy admitted that she did not know of "any prior case in which an Ethicon or J&J employee was terminated (or even disciplined) for having a consensual romantic relationship with an alleged subordinate," and she was unaware of any written J&J policy "prohibiting the type of consensual romantic relationship that allegedly occurred between plaintiff and the employee."  Id. at 404-05.

### B.

Defendants filed a motion for summary judgment, seeking to dismiss plaintiff's CEPA action.  The trial court granted the

9

motion.  The court relied, in part, on the prior Appellate Division decision in Massarano v. New Jersey Transit, 400 N.J. Super. 474 (App. Div. 2008), in concluding that, because plaintiff admitted "it was his job to bring forth issues regarding the safety of drugs and products," he "failed to show that he performed a whistle-blowing activity" protected by CEPA. The court denied plaintiff's motion for reconsideration.

Plaintiff appealed, and the Appellate Division reversed in a published decision.  Lippman, supra, 432 N.J. Super. 378.  The panel rejected the trial court's interpretation of protected whistleblowing conduct under N.J.S.A. 34:19-3(c), which the trial court held precluded a plaintiff who "[o]bjects to[] or refuses to participate in" employer behavior as part of his or her job duties from entitlement to protection under CEPA.  See id. at 381, 406-07, 409-10.  The panel found the trial court's construction of the statute to be inconsistent with the broad remedial purposes of CEPA.  See id. at 381, 406-07.  To the extent that such a reading was implicitly espoused or endorsed in Massarano, the Lippman panel expressly declined to follow it. Id. at 381-82, 406.

In emphasizing the incongruity of a construction that cuts out watchdog employees from CEPA's remedial protective purpose, the panel noted especially that watchdog employees are the most vulnerable to retaliation because they are "uniquely positioned

10

to know where the problem areas are and to speak out when corporate profits are put ahead of consumer safety." Id. at 406-07. As further support that job duties are not outcome determinative in a CEPA claim, the panel noted that CEPA's definition of an "employee" eligible for the Act's protection is broad and does not limit protection based on job title or function. Id. at 407 (citing N.J.S.A. 34:19-2(b)).

Under the panel's interpretation of protected whistleblowing conduct, "[i]f an individual's job is to protect the public from exposure to dangerous defective medical products, CEPA does not permit the employer to retaliate against that individual because of his or her performance of duties in good faith, and consistent with the job description." Id. at 410. Applying that approach to the case at hand, the panel found that genuine issues of material fact existed and held that plaintiff had pled facts sufficient for a rational jury to find that defendants violated CEPA when they terminated his employment. See id. at 382, 408-09.

Importantly, the Appellate Division proceeded to articulate a "paradigm" for a prima facie CEPA cause of action for employees who perform watchdog activities. The panel built from a model set forth by this Court in Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003), and defined a watchdog employee as an "employee who, by virtue of his or her duties and responsibilities, is in

11

the best position to: (1) know the relevant standard of care; and (2) know when an employer's proposed plan or course of action would violate or materially deviate from that standard of care." Lippman, supra, 432 N.J. Super. at 410. The panel then instructed that in order for a watchdog employee to present a prima facie CEPA claim, the employee must demonstrate the following elements:

> First, the employee must establish that he or she reasonably believed that the employer's conduct was violating either a law, government regulation, or a clear mandate of public policy. Second, the employee must establish that he or she refused to participate or objected to this unlawful conduct, and advocated compliance with the relevant legal standards to the employer or to those designated by the employer with the authority and responsibility to comply. To be clear, this second element requires a plaintiff to show he or she either (a) pursued and exhausted all internal means of securing compliance; or (b) refused to participate in the objectionable conduct. Third, the employee must establish that he or she suffered an adverse employment action. And fourth, the employee must establish a causal connection between these activities and the adverse employment action.

> [Ibid. (second emphasis added).]

Although this four-prong test largely tracks the standard for a prima facie CEPA claim that this Court articulated in Dzwonar, supra, 177 N.J. at 462, the language emphasized above is not part of the Dzwonar test. As the panel's holding recognized, under this additional requirement, unless a watchdog

12

employee refused to participate in the conduct, such an employee must demonstrate that he or she "pursued and exhausted all internal means of securing compliance." Lippman, supra, 432 N.J. Super. at 410.

As noted, this Court granted the petition and cross-petition filed in this matter. Lippman v. Ethicon, Inc., 217 N.J. 292 (2014).

## II.

## A.

## 1.

In support of their petition, defendants assert that the Appellate Division erred in holding that protected activity under CEPA extends to watchdog employees' regular job responsibilities. They advance a three-prong argument: (1) the statutory language of CEPA does not support the Appellate Division's broad holding; (2) the Appellate Division's holding contravenes previous appellate decisions; and (3) the holding adversely impacts the "balance between the scope of protected activity and the ability of employers to properly run their business."

First, defendants argue that CEPA's language limits protected activity to an employee's conduct that is in opposition to the employer. Specifically, defendants contend that the "objects to" clause, which provides that employees must

"object[] to, or refuse[] to participate in any activity, policy or practice" of the employer to receive CEPA protection, N.J.S.A. 34:19-3(c), indicates that the statute protects only employee activity that goes beyond the scope of the employee's job responsibilities. According to defendants, "[t]he employee logically cannot . . . object[] or refuse[] to participate in the very activity, policy or practice that he or she is helping to formulate on behalf of the organization." Applying their construction to the matter at hand, defendants argue that all of plaintiff's alleged whistleblowing activities were in accordance with his job responsibilities and, therefore, cannot be in opposition to the employer as they argue the "objects to" language requires. Defendants add that Ethicon heeded some of plaintiff's recommendations while he was on the quality board, and that plaintiff never reported any of defendants' putative violations to outside authorities. Defendants maintain that Ethicon terminated plaintiff's employment because of his relationship with a subordinate, not as a retaliatory measure.

Second, in respect of the assertion that the Appellate Division's holding is inconsistent with prior precedent, defendants point to Massarano, supra, where, according to defendants, an Appellate Division panel maintained that an employee who reports conduct as part of his or her job duties is not protected under CEPA. 400 N.J. Super. at 491. Defendants

14

assert that six unpublished Appellate Division decisions and several federal district court cases follow the Massarano decision. Accordingly, defendants argue that Massarano and its progeny should have prevented the appellate panel in this matter from broadly reading CEPA to include job responsibilities as protected activity under the Act.

Finally, defendants advance a policy argument. They contend that the Appellate Division's decision upsets the employee-employer balance between the scope of protected employee activity and the ability of employers to effectively run their businesses. Defendants rely on Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 71 (1980), for the proposition that protected activity should not interfere with a business's internal operations. Defendants argue that the appellate holding in this case is at odds with that principle because it will interfere with employers' ability to make lawful and justifiable personnel decisions about watchdog employees who make erroneous or overly conservative judgments. According to defendants, the Appellate Division's decision in this matter creates a class of employees against whom an employer cannot take an adverse employment action without risking CEPA liability, and it incentivizes employers to no longer entrust employees with critical matters of legal compliance or public safety.

15

2.

In response to plaintiff's cross-petition for certification, defendants continue to maintain that the Appellate Division erred in expanding the scope of protection under CEPA and further argue that plaintiff seeks to amplify that error by removing an essential element of whistleblowing, namely, showing that plaintiff objected by exhausting all internal means.  Defendants urge this Court to adopt a construction of the "objects to" clause that will require watchdog employees to exhaustively escalate an issue when seeking to compel compliance with law or clear public policy in order for an employee's conduct to be deemed protected activity under CEPA.  Consistent with that position, defendants contend that the Appellate Division simply was tailoring the statute to the particular case, not imposing a higher burden on watchdog employees.  They also contend that any reliance on Fleming v. Correctional Healthcare Solutions, Inc., 164 N.J. 90 (2000), is misplaced because that case did not analyze the language or scope of CEPA.

B.

1.

Plaintiff argues in support of the Appellate Division holding that CEPA-protected conduct can include the ordinary job duties of watchdog employees.  Countering defendants' three-

16

prong argument, plaintiff first relies on the plain language of CEPA, which plaintiff asserts unambiguously extends protection to all employees and is silent on any job-duty exception when defining protected whistleblowing conduct. Plaintiff contends that the plain language best indicates the Legislature's intent.

Second, plaintiff argues that the Appellate Division's holding does not conflict with Massarano or its progeny. According to plaintiff, Massarano held that the plaintiff's CEPA claim failed because she did not establish that she reasonably believed that her employer violated a clear mandate of public policy or that her employer acted with a retaliatory motive in terminating her employment. Plaintiff maintains that defendants' misreading of Massarano stems from a single line of dictum that is taken out of context. Moreover, plaintiff is dismissive of Massarano's "progeny" because those cases are unpublished and have no precedential value, are factually distinct, or fail to engage in a statutory analysis. Plaintiff also asserts that this Court already has declined to add a "job duties" exception to CEPA-protected conduct when it did not acknowledge such an exception in Donelson v. DuPont Chambers Works, 206 N.J. 243, 256-57 (2011).

Finally, in respect of defendants' policy argument, plaintiff contends that the Appellate Division's holding strikes the proper balance between employee protection and an employer's

17

effective running of its business. As plaintiff argues, watchdog employees protect employers from themselves by deterring employer wrongdoing. Moreover, plaintiff maintains that watchdog employees are often the only safeguard between profit-driven corporations and an unknowing public. Adopting a "job duties" exception, plaintiff argues, would weaken CEPA because watchdog employees would have no legal protections, thus eliminating the curb against "the corporate evils CEPA was intended to prevent." According to plaintiff, a job-duties exception would unduly complicate CEPA claims by requiring factfinders to determine whether a plaintiff's alleged protected conduct fell within his or her normal job duties.

2.

On the issue raised in his cross-petition, plaintiff argues that although the Appellate Division correctly interpreted the scope of CEPA to include watchdog employees, it erred in imposing a requirement that those employees must exhaust all internal means of compliance. Plaintiff asserts that such a requirement is inconsistent with the plain language of CEPA for the simple but forceful reason that the statute does not distinguish among types of employees.

Rather, plaintiff contends that the Legislature intended for CEPA to have a broad scope and to allow any whistleblower employee to bring a retaliation claim. He points to decisions

18

of our Court to support that intention.  Specifically, plaintiff argues that the panel's new requirement violates this Court's holding in Dzwonar, supra, 177 N.J. at 462, which established the elements for a prima facie case of retaliatory action under CEPA.  Further, plaintiff maintains that the appellate panel's added requirement for a watchdog employee to establish a prima facie CEPA claim is at odds with Fleming, supra, 164 N.J. at 97, wherein the Court rejected the argument that an employer could require an employee to exhaust the employer's internal complaint procedure prior to qualifying for CEPA protection.

C.

Amici Employers Association of New Jersey (EANJ), Academy of New Jersey Management Attorneys (ANJMA), New Jersey Business & Industry Association and New Jersey Civil Justice Institute (collectively NJBIA), and the New Jersey Defense Association (NJDA) reinforce defendants' argument that CEPA does not protect employees acting within the scope of their employment.  We do not repeat their arguments except to note a few points.

EANJ emphasizes that employees should be required to respect the demands of the employer, unless those demands are unlawful.  ANJMA argues in favor of a higher standard for watchdog employees to qualify for CEPA protection if they are to be eligible for such protection at all.  NJBIA views the instant matter as presenting the question of whether CEPA protection

19

should be expanded, which it argues should be an issue for the legislative branch, not the Judiciary. Finally, NJDA highlights federal and state laws regulating product liability and argues that compliance with those provisions requires exclusion of watchdog employees performing job duties from CEPA protection.

Amici New Jersey Association for Justice (NJAJ), as well as New Jersey Work Environment Council, New Jersey State Industrial Union Council, and twenty-five other environmental, labor, consumer, and community organizations (collectively NJWEC), support plaintiff's contention that CEPA protects employees' job responsibilities. We do not repeat all of their arguments either except to note the following.

NJWEC maintains that CEPA's language of "objects to[] or refuses to participate in," in the opening clause of N.J.S.A. 34:19-3(c), reinforces plaintiff's position because an employee would never be expected to participate in an activity unless it fell within his or her job duties in the first place. It provides multiple textual and statutory construction bases for rejecting any exception for watchdog employees from CEPA protection under N.J.S.A. 34:19-3(c). NJWEC also cites to whistleblower statutes in other states that extend protections to watchdog employees. Further, NJWEC notes that the additional exhaustion requirement imposed on watchdog employees under the Appellate Division's opinion exceeds the notice requirement to

20

employees that the Legislature expressly imposed for other subsections of N.J.S.A. 34:19-3. NJAJ addresses defendants' policy arguments -- about the negative consequences of reading CEPA to protect the job duties of watchdog employees -- by noting that those employees remain obligated to bear the burden of establishing a prima facie case of retaliatory action.

III.

In determining whether plaintiff is entitled to bring his CEPA cause of action or, conversely, whether defendants should be entitled to summary judgment based on their assertion that plaintiff is not entitled to whistleblower protection for performing his normal watchdog job duties, we must construe CEPA's language. In addressing this question of the Act's meaning, the appellate review is de novo. See Hodges v. Sasil Corp., 189 N.J. 210, 220-21 (2007) (citing Balsamides v. Protameen Chems., Inc., 160 N.J. 352, 372 (1999)).

The Legislature enacted CEPA in 1986. L. 1986, c. 105. The Act is considered remedial legislation entitled to liberal construction, its public policy purpose to protect whistleblowers from retaliation by employers having been long recognized by the courts of this State. Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 431 (1994);[4] see, e.g.,

---

[4] As explained in Abbamont, supra, CEPA is entitled to liberal construction, in part stemming from subsequent legislative

Donelson, supra, 206 N.J. at 257-58 (noting CEPA's liberal construction in light of its "broad remedial purpose"); Dzwonar, supra, 177 N.J. at 463 (quoting Abbamont, supra, 138 N.J. at 431) (same); Estate of Roach v. TRW, Inc., 164 N.J. 598, 610 (2000) (quoting Barratt v. Cushman & Wakefield of N.J., Inc., 144 N.J. 120, 127 (1996)) (same). After nearly two decades of implementation, it is beyond dispute that the legislative purpose animating CEPA is, as expressed initially in Abbamont, supra, to "protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." 138 N.J. at 431. We thus turn to the specific language of CEPA at issue in this matter.

N.J.S.A. 34:19-3 establishes that whistleblowing activity is protected from employer retaliation. In relevant part, it provides:

> An employer shall not take any retaliatory action against an employee because the employee does any of the following [protected activities]:
>
> a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, or another employer, with whom there is a business

_____

commentary indicating that CEPA's remedies were meant to be so construed. 138 N.J. at 431 (citing Judiciary, Law & Public Safety Committee, Statement on Assembly Bills No. 2872, 2118, 2228 (1990)).

22

relationship, that the employee reasonably believes:

> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law, . . . or, in the case of an employee who is a licensed or certified health care professional, reasonably believes constitutes improper quality of patient care; or
>
> (2) is fraudulent or criminal . . . ;

b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation . . . ; or

c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law, . . . or, if the employee is a licensed or certified health care professional, constitutes improper quality of patient care;
>
> (2) is fraudulent or criminal . . . ; or
>
> (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

[N.J.S.A. 34:19-3.]

An "employee" is defined in a separate section. An "employee" is "any individual who performs services for and under the control and direction of an employer for wages or other remuneration." N.J.S.A. 34:19-2(b). There are no

exceptions to that generic definition contained in the Act. Moreover, our case law has taken an inclusive approach in determining who constitutes an employee for purposes of invoking the protection provided through this remedial legislation. See D'Annunzio v. Prudential Ins. Co. of Am., 192 N.J. 110, 126-27 (2007) (extending CEPA protection, in furtherance of its remedial goals, to independent contractors through application of multi-factor test); see also Stomel v. City of Camden, 192 N.J. 137, 154-55 (2007) (applying D'Annunzio test in extending CEPA protection to legal professional serving as public defender); Feldman v. Hunterdon Radiological Assocs., 187 N.J. 228, 241 (2006) (urging courts to examine nature of plaintiff's relationship with party against whom CEPA claims are advanced rather than relying on labels); cf. Lowe v. Zarghami, 158 N.J. 606, 617-18 (1999) (noting appropriateness of use of relative-nature-of-the-work test to broaden employee status when public policy underlying social legislation "dictate[s] a more liberal standard" (citations omitted)).

To that statutory prescription of protected whistleblower activity for individuals who merit the designation of "employees" under CEPA, we add only the following general background law.

Prior to the Appellate Division's consideration of the instant matter, our Court had identified, and reduced to a

24

simple list, the necessary elements for a plaintiff to establish a prima facie claim under CEPA. See Dzwonar, supra, 177 N.J. at 462. Those four elements, which have not been altered to date, bear repeating. To establish a prima facie CEPA action, a plaintiff must demonstrate that:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy;
>
> (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3(c);
>
> (3) an adverse employment action was taken against him or her; and
>
> (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.
>
> [Ibid. (citations omitted); see also Winters v. N. Hudson Reg'l Fire & Rescue, 212 N.J. 67, 89 (2012) (quoting same).]

Against that backdrop, we turn to consider whether the Appellate Division correctly determined that plaintiff's ability to proceed with his CEPA claim was improperly cut short by the trial court's grant of summary judgment to defendants and dismissal of the action.

IV.

A.

1.

25

As the matter before us requires construction of a legislatively created cause of action, our job is to implement legislative intent. N.J. Dep't of Children & Families v. A.L., 213 N.J. 1, 20 (2013) (citing Allen v. V & A Bros., Inc., 208 N.J. 114, 127 (2011)). In this instance, any fair analysis of CEPA's scope must "begin . . . by looking at the statute's plain language, which is generally the best indicator of the Legislature's intent." Donelson, supra, 206 N.J. at 256 (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)).

Starting with that plain language, by its very terms, CEPA does not define employees protected by the Act as inclusive of only those with certain job functions. An "employee" is "any individual who performs services for and under the control and direction of an employer for wages or other remuneration." N.J.S.A. 34:19-2(b) (emphasis added). As noted, our case law has extended the reach of that definition, not restricted it. See D'Annunzio, supra, 192 N.J. at 126-27.

Certainly, no opinion from this Court has read into CEPA's definition of an "employee" entitled to protection from retaliatory action under N.J.S.A. 34:19-2(b), any restriction to discrete classes of employees. To do so would seemingly contravene two principles of statutory construction. One is not to engraft language that the Legislature has not chosen to include in a statute. See Murray v. Plainfield Rescue Squad,

26

210 N.J. 581, 596 (2012) ("We are charged with interpreting a statute; we have been given no commission to rewrite one."). That principle has been invoked in the past when we have declined to add restrictive language to CEPA. See Donelson, supra, 206 N.J. at 261 (citing Mazzacano v. Estate of Kinnerman, 197 N.J. 307, 323 (2009)). Another principle requires that, as remedial legislation, CEPA should be liberally construed. See Dzwonar, supra, 177 N.J. at 463 (citing Abbamont, supra, 138 N.J. at 431, for proposition that, as remedial legislation, CEPA should receive liberal construction to achieve "its important social goal[s]"); see generally D'Annunzio, supra, 192 N.J. at 120 (citing cases in support of that longstanding guiding principle instructing interpretation of CEPA).

There is simply no support in CEPA's definition of "employee" to restrict the Act's application and preclude its protection of watchdog employees. Defendants concede that point, but nevertheless press their argument that plaintiff's claim should be dismissed because he is not entitled to protection under N.J.S.A. 34:19-3, which defines protected activity under CEPA. Their argument focuses on the Act's description of protected activity in N.J.S.A. 34:19-3(c) -- the "objects to" clause. Upon review, that argument is unpersuasive and the Appellate Division properly rejected it.

27

CEPA's section that defines protected whistleblowing activity, N.J.S.A. 34:19-3, does not, on its face, expressly limit protection only to watchdog employees who object to conduct outside the scope of their job duties, as defendants argue. Instead, N.J.S.A. 34:19-3 begins broadly: "An employer shall not take any retaliatory action against an employee because the employee does any of the following . . . ." It proceeds to set forth grounds for a CEPA claim in three circumstances. They are when the employee:

(1) "[d]iscloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer . . . ," N.J.S.A. 34:19-3(a);

(2) "[p]rovides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer . . . ," N.J.S.A. 34:19-3(b); or

(3) "[o]bjects to, or refuses to participate in any activity, policy or practice . . . ," N.J.S.A. 34:19-3(c).

Defendants focus on subsection (c)'s use of the verbs of "object[]" or "refuse[] to participate" in an activity. According to defendants, those verbs are ambiguous and implicitly indicate, in this context, that an employee must act outside of his or her prescribed duties to engage in protected whistleblowing activity. They reason that when an employee

28

expresses disagreement with an employer's action or proposed action within the context of his or her normal job duties, the employee is acting on behalf and in service of the employer; therefore, according to defendants, such an employee is not "[o]bject[ing] to, or refus[ing] to participate in an[] activity, policy or practice" of the employer as N.J.S.A. 34:19-3(c) requires.  Defendants' argument, in effect, would have this Court place an indirect limitation on the otherwise broad definition of an employee found in N.J.S.A. 34:19-2(b).  It certainly is not directly stated as a limitation in N.J.S.A. 34:19-3(c).

However, the plain meaning of the word "object" does not support defendant's argument in favor of an implicit requirement that employees must be acting outside the scope of their job duties in order to engage in CEPA-protected conduct under N.J.S.A. 34:19-3(c).  See Donelson, supra, 206 N.J. at 256 (explaining that Court "must ascribe to the words used in CEPA their 'ordinary meaning and significance'").  Webster's II New Riverside University Dictionary defines "object" as:  (1) "To hold or present an opposing view"; and (2) "To feel adverse to or express disapproval of something."  Webster's II New Riverside University Dictionary 810 (1994).  That meaning is neither ambiguous, nor indicative of a requirement that employees go beyond or contradict their job duties in order to

29

"object[] to" an employer's activity under subsection (c). In construing this remedial legislation, we have repeatedly instructed courts to give it a liberal reading. See D'Annunzio, supra, 192 N.J. at 120. It would be wholly incongruent to strain the normal definition of "object" into some implicit requirement that limits a class of employee to whistleblower protection only for actions taken outside of normal job duties. Yet that is precisely what defendants seek through their argument.

Although under subsection (c) the plaintiff must object or refuse to participate in an activity, whether the objection or refusal is part of his or her job responsibilities is not mentioned. There is no language in subsection (c) that hints that an employee's job duties affect whether he or she may bring a CEPA claim. If anything, the corollary verbiage of "refuse[] to participate" in subsection (c) implies that CEPA-protected conduct can occur within the course of an employee's normal job duties because it would be likely that the employee would be asked to participate in employer activity within the course of, or closely related to, his or her core job functions. Moreover, the fact that subsection (c)(1) expressly provides protection when "a licensed or certified health care professional" objects to or refuses to participate in employer activity that "constitutes improper quality of patient care" provides further

30

indication that CEPA-protected conduct may occur in the course of one's job duties: it would undoubtedly arise most frequently within a core job function of a medical doctor to object to or refuse to participate in employer conduct that he or she reasonably believes "constitutes improper quality of patient care." N.J.S.A. 34:19-3(c)(1).

Attention to the overall structure of N.J.S.A. 34:19-3 further supports the conclusion that the "objects to" clause is not meant to exclude an employee's normal job responsibilities. Neither subsection (a) nor subsection (b) state expressly, or suggest implicitly, that an employee must be acting outside of his or her usual duties to merit protection from retaliatory employer conduct. Defendants' argument about the "objects to" language ignores subsections (a) and (b), and focuses instead on the "object" verb used exclusively in subsection (c). Read as a whole, it is inexplicable that the Legislature intended for subsection (c) to carry an implicit "job duties" exception that excludes watchdog employees, while the other subsections do not. See State v. Sutton, 132 N.J. 471, 479 (1993) (finding that court's task is to harmonize individual sections and read statute in way that is most consistent with overall legislative intent).

In sum, examination of the Act's text, structure, and remedial nature provides compelling evidence against finding a

legislative intent to exclude watchdog employees from CEPA protection under N.J.S.A. 34:19-3(c).

## 2.

To the extent that defendants rely on Massarano, and the trial court found support in that decision for its grant of summary judgment in this matter, the argument is without solid foundation. In Massarano, supra, the motion court had granted summary judgment to the defendants, finding that no law, rule, regulation, or clear mandate of public policy had been violated. 400 N.J. Super. at 486-87. The motion court in that matter further held that there was no whistleblowing activity, determining that the "plaintiff was merely doing her job as the security operations manager by reporting her findings and her opinion to [a supervisor]." Id. at 491. Although the Massarano Appellate Division decision contains language that suggests that a plaintiff who reports conduct as part of his or her job is not entitled to protection under CEPA, the panel's analysis is premised on the conclusion that the defendants did not retaliate against the plaintiff for reporting the disposal of the documents. Ibid. Defendants' further argument that Massarano has been relied upon[5] as support for recognition of a job-duties

---

[5] Defendants cite to unpublished decisions that ostensibly have relied on Massarano for such a position. Unpublished opinions have no precedential value and are not to be cited in argument

32

exception to CEPA's broad protection to employees is similarly unavailing.  Any such reliance misperceives the case's essential finding of no retaliation and results in an overextension of Massarano's significance.  Moreover, we specifically disapprove of any such extrapolation from the Massarano judgment.

Indeed, we note that decisions of this Court have indicated only a contrary approach to CEPA coverage for individuals in positions of responsibility for corporate compliance with law and public policy.

In Mehlman v. Mobil Oil Corp., 153 N.J. 163 (1998), our Court's decision upheld a cause of action under CEPA for a New Jersey employee who alleged that his employer retaliated against him for objecting to a violation of a clear mandate of public policy that threatened to harm citizens of Japan.  Id. at 195-96.  The plaintiff, Dr. Myron Mehlman, was a toxicologist who was Mobil's director of toxicology as well as manager of its Environmental Health and Science Laboratory.  Id. at 166, 168.  Mehlman's primary job responsibilities included "represent[ing] Mobil on toxicology matters, and provid[ing] toxicologic and regulatory advice for prudent business decisions."  Id. at 168. (alterations in original) (internal quotation marks omitted).

---

to the courts of this State pursuant to the Court Rules.  See R. 1:36-3.

33

While representing Mobil at an international symposium in Japan, Mehlman learned that the benzene content of the gasoline at Mobil's Japanese subsidiary was too high.  Id. at 169.  Mehlman so informed the Japanese managers and proceeded to insist that the levels were dangerous and had to be reduced.  Ibid.  Upon returning from Japan, Mehlman was placed on indefinite special assignment and subsequently fired, allegedly because of a conflict of interest between his responsibilities to Mobil and his activities on behalf of his wife's company.  Id. at 170-71.

We had no hesitancy in recognizing that a cause of action existed under CEPA based on the fact that "the employee objected to a practice that he reasonably believed was incompatible with a clear mandate of public policy designed to protect the public health and safety of citizens of another country."  Id. at 165.  Our decision specifically noted that Mehlman's responsibilities were "broad and of international scope," and included "approval of protocols for and monitoring quality of toxicity testing" and "informing Mobil of pending developments in toxicology regulations that could affect Mobil's worldwide business."  Id. at 168.  None of those factors were ever regarded as disqualifying the plaintiff from advancing a CEPA claim.

Similarly, in Estate of Roach, supra, we addressed a scenario involving a plaintiff who was the manager of the defendant's Business Ethics and Conduct Program and who was

34

substantially involved in implementing the company's code of conduct, which required employees to report possible code-of-conduct violations. 164 N.J. at 602-03. After attempting to report possible violations, the plaintiff was discharged from employment. Id. at 604-06. Our judgment upheld the jury's CEPA verdict in favor of the plaintiff, and in our decision we pointed to "the numerous improprieties alleged" by the plaintiff against co-workers, the defendant company's "sensitive position as a federal defense contractor," and the existence of a code of conduct that required "strict compliance" for employees of the company. Id. at 613.

In conclusion, we find no support in CEPA's language, construction, or application in this Court's case law that supports that watchdog employees are stripped of whistleblower protection as a result of their position or because they are performing their regular job duties. We therefore affirm the Appellate Division's judgment in this matter that reversed the grant of summary judgment to defendants.

B.

Having agreed with the Appellate Division that watchdog employees are entitled to CEPA protection when performing their ordinary job duties, we turn to the panel's reformulation of the elements for such a cause of action when brought by such employees. The panel followed the Dzwonar paradigm for

35

establishing a CEPA cause of action, but added a caveat, as follows:

> [T]he employee must establish that he or she refused to participate or objected to this unlawful conduct, and advocated compliance with the relevant legal standards to the employer or to those designated by the employer with the authority and responsibility to comply. To be clear, this second element requires a plaintiff to show he or she either (a) pursued and exhausted all internal means of securing compliance; or (b) refused to participate in the objectionable conduct.
>
> [Lippman, supra, 432 N.J. Super. at 410.]

Although we do not doubt its intent to be helpful by adding clarity to the proofs required for a watchdog employee's CEPA cause of action under N.J.S.A. 34:19-3(c), whose verbiage the panel tracked, we are compelled to disapprove of the panel's formulation. Simply put, the panel has added to the burden required for watchdog employees to secure CEPA protection under subsection (c) by including an obligation nowhere found in the statutory language.

For the same reasons cited earlier, courts should not rewrite plainly worded statutes. It is not our job to engraft requirements to a CEPA cause of action under subsection (c) that the Legislature did not include. It is our role to enforce the legislative intent as expressed through the words used by the Legislature. In subsection (c), there is no exhaustion requirement.

36

By way of contrast, where the Legislature intended to impose an exhaustion requirement, it has said so clearly. Through N.J.S.A. 34:19-4, the Legislature has required prior notice to the employer and opportunity to correct the activity, policy, or practice, in order for a putative whistleblower plaintiff to obtain protection against retaliatory action for disclosure made to a public body. Thus, a whistleblower plaintiff pursuing a cause of action based on disclosure to a public body under subsection (a) or (b) must demonstrate compliance with N.J.S.A. 34:19-4's particular exhaustion requirement. The legislative silence on any such requirement applicable to actions brought under subsection (c) is deafening.

Besides lacking support from CEPA's text, the requirement imposed by the panel is incompatible with Fleming, supra. 164 N.J. at 97 (rejecting argument that employer may insist on exhaustion of internal complaint procedures for employee to be eligible for CEPA protection). And, as one amicus rightfully pointed out, the exhaustion requirement imposed by the Appellate Division exceeds the obligation expressly imposed by the Legislature under N.J.S.A. 34:19-4, which requires only notice and opportunity to correct.

For all the above reasons, we modify the Appellate Division judgment to the extent that it imposed an exhaustion requirement not supported by the statute's terms. We hold that CEPA imposes

37

no additional requirements on watchdog employees bringing a CEPA claim unless and until the Legislature expresses its intent that such employees meet a special or heightened burden.

V.

The judgment of the Appellate Division is affirmed, as modified.  The matter is remanded for further proceedings consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES ALBIN, FERNANDEZ-VINA and SOLOMON join in JUSTICE LaVECCHIA's opinion.  JUSTICE PATTERSON and JUDGE CUFF (temporarily assigned) did not participate.

SUPREME COURT OF NEW JERSEY

NO.    A-65/66                           SEPTEMBER TERM 2013

ON CERTIFICATION TO      Appellate Division, Superior Court


JOEL S. LIPPMAN, M.D.,

        Plaintiff-Respondent
        and Cross-Appellant,

                v.

ETHICON, INC. and JOHNSON &
JOHNSON, INC.,

        Defendants-Appellants
        and Cross-Respondents.


DECIDED            July 15, 2015
                Chief Justice Rabner                    PRESIDING
OPINION BY              Justice LaVecchia

CONCURRING/DISSENTING OPINIONS BY

DISSENTING OPINION BY

| CHECKLIST | AFFIRMED AS MODIFIED/ REMANDED | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | -------------------- | -------------------- |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | -------------------- | -------------------- |
| TOTALS | 5 | |