**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2264-18T2

DOUGLAS COOK and
GLENN M. DEITZ,

     Plaintiffs-Appellants,

v.

PRIME HEALTHCARE SERVICES –
ST. CLARE'S, LLC,

     Defendants-Respondents.

_____

Argued January 23, 2020 – Decided June 29, 2020

Before Judges Nugent, Suter and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Docket No. L-0497-16.

Douglas C. Gray argued the cause for appellants (Morris Downing & Sherred, LLP, attorneys; Paul Gregory Hunczak, of counsel and on the brief; Douglas C. Gray, on the brief).

Steven David Gorelick argued the cause for respondents (Garfunkel Wild, PC, attorneys; Steven David Gorelick and Michael J. Keane, of counsel and on the brief).

PER CURIAM

Plaintiffs, paramedics Douglas Cook and Glenn M. Deitz, appeal from orders dismissing their amended whistleblower complaint, in part for failure to state a claim and in part on summary judgment. Their amended complaint alleges they were constructively discharged when defendant, Prime Healthcare Services-St. Clare's, LLC (Prime), implemented an operational shift change that prevented them from working a second job and refused them per diem work. Because plaintiffs failed to plead a cause of action for constructive discharge, and because plaintiffs failed to present evidence from which a jury could infer Prime retaliated against them by subjecting them to an adverse employment action, we affirm.

This case commenced in 2016 when plaintiffs filed a two-count complaint against Prime, the first count alleging they were subjected to an adverse employment action in violation of the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14, and the second count alleging wrongful termination contrary to a clear mandate of public policy. Prime moved pursuant to Rule 4:6-2(e) to dismiss the complaint for failure to state a claim upon which relief could be granted, and the court granted the motion without prejudice.

2

Plaintiffs filed an amended complaint in which they alleged the same two causes of action but added more detail. On Prime's motion to dismiss for failure to state a claim, the court granted the motion as to plaintiffs' CEPA theory based on the operational shift change but denied the motion as to plaintiffs' CEPA theory based on Prime refusing them per diem work. The court also granted the motion as to the complaint's second count alleging plaintiffs were constructively discharged contrary to a strong public policy mandate.

Following the close of discovery, defendants moved for summary judgment. The court granted the motion and denied plaintiffs' application for reconsideration. Plaintiffs filed this appeal.

The allegations in the amended complaint and the evidence on the summary judgment motion record disclose the following facts. Plaintiffs were employed by St. Clare's Health System for more than nine years, and both were full-time night shift paramedics when Prime acquired St. Clare's in October 2015. Plaintiffs worked in Advanced Life Support (ALS) Unit 504. Each also worked a second job.

A few weeks after Prime acquired St. Clare's, plaintiffs asserted Prime had introduced new policies that were illegal. Cook claimed the policies included requiring paramedics to "steer" patients to Prime-owned satellite emergency

rooms. Plaintiffs specified neither the source nor the method of communication of these alleged illegal policies. Prime promptly responded to Cook, noting he claimed to have expressed these concerns over the past several years, yet implied he had received this information during recent meetings. Prime denied plaintiffs' assertions and politely suggested Cook was acting on misinformation and rumors.

Plaintiffs remained employed by Prime from October 2015 until June 2016, when they separated from employment. They claimed they were constructively discharged, but they left after Prime restructured shift hours that were incompatible with plaintiffs' second jobs.

In May 2016, Prime wrote to all employees assigned to two of its ambulance units, 504 and 506, and explained that a shift change would occur effective July 2016. Citing "operational needs," the two units would transition from a twenty-four-hour schedule to an eighteen-hour schedule to eliminate overnight hours. As a result, full-time employees in those units would now work two eighteen-hour shifts per week rather than the current schedule of three twelve-hour shifts. Assigned to unit 504, plaintiffs' work hours would be affected, and they reacted quickly.

A-2264-18T2

Cook asserted in a letter to Prime's manager that the shift change would adversely impact the community's safety, affect Prime's legal and ethical obligations to the Department of Health, and affect his ability to hold his second job. He emphasized, "Due to the excessively long shifts I am concerned for my safety, for that reason I will most likely have to resign, take a [per diem] position if available or transfer to a truck that is farther away."

Prime personnel met with Cook the first week in June and offered him a full-time position in another unit where he could return to three twelve-hour shifts per week. Cook declined because the 7:00 p.m. to 7:00 a.m. shift Prime offered did not fit his schedule—he had been working a 6:00 p.m. to 6:00 a.m. shift—and the new unit was fifty-minutes away compared to his current ten-minute commute. Cook requested a per diem shift. Prime claimed there were none available. Cook followed up the meeting with a letter stating that he "still contend[s] that the reduction of [his] specific unit is a direct retaliation for [his] past correspondence regarding [St. Clare's] EMS violations and the Certificate of Need (CN) and the administrative code surrounding the operations of a satellite ED."

In a subsequent email, after reiterating these and other accusations, Cook stated: "At this time due to the safety and hardship that accompanies the only

 A-2264-18T2

options that have been presented I have to decline the 504, 505, and 502 positions and anxiously await my [per diem] opportunity." Cook stated that "[t]his is by no means a resignation, as I have no intention of resigning my position. I have been an employee for 10 years, as I am being forced out, part-time employees with less seniority currently occupy Per Diem positions, as well as positions that are both at the same location, same rotation and same hours as I currently [have]."

Prime responded that because Cook had declined all options and no per diem positions were available, it would "consider this a voluntary resignation." Cook replied that he never resigned from his position, and Prime had simply "changed the terms of my employment in such a way that it is impossible for me to do my job, hence this is a termination." Cook then gave his two weeks' notice and set his "termination day" for June 24, 2016.

Deitz also objected to the shift change. He too had a meeting in early June 2016 with Prime management, asked about per diem availability, and was told there were no per diem positions available. Deitz followed up with an exchange of emails accusing Prime of retaliating against him because of his complaint concerning the new ambulance procedures. He told Prime, "[y]ou have left me no choice but to resign my position under duress." After further email

6

exchanges, Deitz gave his two weeks' notice and set his termination for June 23, 2016.

Plaintiffs filed their initial two-count complaint in September 2016. In count one, they alleged retaliation in violation of CEPA, claiming they "reasonably believed that [St. Clare's] and Prime's conduct, activities, directives, practices and procedures," had "(i) constituted violations of a law, or a rule or regulation promulgated pursuant to law, (ii) constituted fraudulent or criminal acts, and/or (iii) were incompatible with a clear mandate of public policy concerning the public health, safety or welfare." Specifically, they alleged this conduct included "the overall contraction of [St. Clare's] EMS Services to Sussex County, the use of ALS units to transport patients in Sussex County, the 'steering' of patients to Prime facilities, and the 'steering' of patients to the facilities not appropriate for their care including the Sussex SED." Plaintiffs asserted that "[a]s a result of [p]laintiffs' objection to, refusal to participate in, and threats to report such conduct, [d]efendants took adverse employment actions against [p]laintiffs including but not limited to constructively terminating them," and as such, they violated CEPA. Count two alleged wrongful termination in violation of public policy.

The court granted Prime's motion to dismiss the complaint pursuant to Rule 4:6-2(e) for failure to state a claim on which relief could be granted. The dismissal was without prejudice. Plaintiffs filed an amended complaint in March 2017 that mirrored the first complaint but provided additional information about the per diem shift structure and made further allegations of targeting and retaliation. Plaintiffs alleged Prime "preclud[ed] them from moving into per diem positions consistent with [d]efendants' standard practices," in addition to their claim of constructive termination.

Prime filed another motion to dismiss for failure to state a claim. The court granted Prime's motion in part as to the CEPA shift change and constructive discharge claims but denied the motion as to plaintiffs' retaliation claims based on per diem hiring. For the shift change claim, the court found "the record [did] not demonstrate plaintiffs suffered an adverse employment action related to the shift change." The court noted there was no controlling New Jersey case law finding a shift change implemented by management as to classes of employees to be in and of itself an adverse employment action. No case law suggested an employer had to consider individual employees when setting departmental policies, so the record did "not demonstrate plaintiffs suffered an adverse employment action due to the implementation of a

department-wide shift change."  As such, the court found plaintiffs failed to plead a cause of action for constructive discharge that was "so intolerable that a reasonable person subject to [those conditions] would resign."

Regarding the availability of per diem shifts, however, the court found "there [was] a question of material fact as to whether plaintiffs were denied a per diem position due to whistle-blowing activity."  The court found the record was unclear as to whether per diem positions existed at that time, whether plaintiffs would have been denied per diem positions prior to the complaint, and whether such a denial would have qualified as an adverse employment action under CEPA.

Discovery disclosed that a per diem paramedic position had opened and had been posted internally on June 23, 2016.  Prime filled the position with an employee who had emailed Prime on May 24, 2016, and expressed interest in the next available per diem position.  Though Prime invited plaintiffs to monitor the employment website for per diem openings, plaintiffs conceded they did not apply for any per diem openings after their resignations because of Prime's allegedly retaliatory attitude.  Plaintiffs considered Prime's hiring of the other person for the June 2016 per diem position, instead of either of them, to be further evidence of retaliation.

A-2264-18T2

Following discovery on the "per diem issues," Prime moved for summary judgment. The trial court granted the motion and issued an order accompanied by a written decision. In its decision, the court found "[p]laintiffs fail[ed] to raise a triable issue of material fact as to whether an adverse employment action occurred." The court explained Prime had not deviated from its standard procedures for assigning employees to per diem shifts, and plaintiffs could not demand a per diem position if one was not available. The court found plaintiffs "offer[ed] only their own self-serving assertions to support their contention that full-time employees were entitled to [per diem] assignments as a matter of right."

The court acknowledged Prime had hired a per diem paramedic instead of either plaintiff. However, this employee had expressed interest in the next available position as early as May, and plaintiffs did not express interest in per diem positions until early June, a time when no per diem positions were available. The court found the other employee held priority over plaintiffs for the next available position, having expressed interest in the position first in time. The court further found plaintiffs terminated their own employment by declining two options for continued work offered by Prime. Despite management inviting

10

plaintiffs to apply for other positions after their resignations, they did not make any further attempts to apply.

The court found "no evidence in the record that Cook or Deitz applied for, inquired about, or took any action to seek a [per diem] position after resigning on June 9th," and that plaintiffs conceded that fact because they "believed that taking further effort to seek employment with Prime would be 'unavailing.'" This did not constitute an adverse employment decision because plaintiffs "elected to end the employment relationship."

This appeal ensued. We affirm, substantially for the reasons expressed by the trial court in its opinions dismissing the amended complaint in part for failure to state a claim upon which relief could be granted and thereafter dismissing the complaint in its entirety on summary judgment. We add the following comments.

First, plaintiffs resigned. Prime did not terminate their employment. Nor were plaintiffs constructively discharged. To prevail on a constructive discharge claim, a plaintiff must prove "not merely 'severe or pervasive conduct,'" but also "conduct that is so intolerable that a reasonable person would be forced to resign rather than to continue to endure it." Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 28 (2002). Plaintiffs were subject to no such

11

conduct. Rather, they were dissatisfied with an operational change in the structure of shifts, a managerial prerogative and decision that affected all employees who worked the restructured shifts, not merely plaintiffs.

Next, as the trial court determined, plaintiffs pleaded and proffered no facts, but rather only conclusory assertions and unsupported suppositions, that they were targeted by the managerial decision to restructure the shifts and suffered an adverse employment action. To establish a CEPA claim, a plaintiff must allege and prove, among other elements, that "an adverse employment action was taken against him or her. . . ." Lippman v. Ethicon, Inc., 222 N.J. 362, 380 (2015). Plaintiffs neither pleaded nor proffered proofs of facts from which a reasonable juror could conclude management's operational change was directed against them. Moreover, as the trial court noted, plaintiffs have cited no precedent that managerial decision-making must include consideration of the possible impact of managerial decisions on jobs one or two employees might have with other companies.

Last, as to plaintiffs' claims concerning per diem work, they offered no competent evidence on the summary judgment motion from which a reasonable juror could have concluded either that per diem work was available at the time they rejected Prime's offers to work different shifts, or that under the standing

12

policy, plaintiffs were entitled to priority over other employees who had requested and been promised per diem work before plaintiffs requested it.

In short, plaintiffs neither pleaded nor proffered competent evidence they were constructively discharged, targeted for an adverse employment action, or deprived of per diem work due to whistle-blowing activity. Their arguments to the contrary are without sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2264-18T2