**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4264-18T2

DEBRA HERBE,

    Plaintiff-Appellant,

v.

RUTGERS UNIVERSITY, THE
STATE UNIVERSITY OF NEW
JERSEY, INCLUDING THE
RUTGERS BIOMEDICAL AND
HEALTH SCIENCES ORGANIZATION,
FORMERLY KNOWN AS THE
UNIVERSITY OF MEDICINE AND
DENTISTRY OF NEW JERSEY,

    Defendant-Respondent.

_____

Argued December 8, 2020 – Decided December 29, 2020

Before Judges Yannotti, Haas and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1191-15.

Thaddeus P. Mikulski, Jr. argued the cause for appellant.

Edward G. Sponzilli argued the cause for respondent (Norris McLaughlin, PA, attorneys; Edward G. Sponzilli and Annmarie Simeone, on the brief).

PER CURIAM

Plaintiff Debra Herbe appeals from the Law Division's April 22, 2019 order, which granted defendant Rutgers University's motion for summary judgment and dismissed the complaint plaintiff filed against defendant under the New Jersey Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14. For the reasons that follow, we reverse and remand for further proceedings.

I.

We begin by summarizing the most salient facts submitted by the parties on defendant's summary judgment motion, viewed in a light most favorable to plaintiff, the non-moving party. Polzo v. Cnty. of Essex Cnty., 209 N.J. 51, 56 n.1 (2012) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). Plaintiff is a licensed nurse and began working for defendant as a Health Care Case Manager in 2009.[1] Plaintiff did well in this position and, in September 2011, was promoted to the position of Clinical Nurse Coordinator in

---

[1] At that time, the program was operated by the University of Medicine and Dentistry of New Jersey, which subsequently merged with Rutgers and no longer exists as a separate entity. See L. 2012, c. 45.

the Child Health Program. Plaintiff's supervisor was Brenda Rosenberg, and Kim Druist and Jan Herbst were two of her co-workers.

On May 9, 2012, Rosenberg, Druist, Herbst, and plaintiff were all assigned to audit charts. Plaintiff claims that when she arrived at work, Herbst told her that Rosenberg and Druist would not be helping with the audit because Druist was busy writing an essay for Rosenberg's application to the Rutgers nursing school's graduate program.[2] About an hour later, plaintiff entered Rosenberg's office to get some forms and heard Rosenberg and Druist talking about how they should write the portion of the application detailing Rosenberg's "objectives." Druist asked plaintiff to help them, but plaintiff left the office without comment.

Plaintiff claims that the next day, Rosenberg and Druist again spent the day in Rosenberg's office working on the application instead of auditing charts. When plaintiff went into the office to get charts, she again found the two women discussing the application.

On May 22, 2012, plaintiff called an anonymous employee hotline at Rutgers to lodge a complaint about Rosenberg using a subordinate to write the

---

[2] Herbst later denied knowing anything about Druist writing the application for Rosenberg.

graduate school program application for her during work hours. Plaintiff did not allege a specific rule or statute that the two women violated, but later asserted they were guilty of theft of time, plagiarism, fraud, and violating an ethics rule applicable to students.

Stephen Mansfield, the business manager for the Rutgers Child Health Program, conducted an investigation of plaintiff's complaint. Mansfield concluded that "Druist typed up the admissions essay and whether or not the ideas came from . . . Rosenberg[,] she did not put those ideas into writing on her own. The accusation is completely founded." Plaintiff claims that, as a result of the investigation, the Rutgers nursing school did not consider Rosenberg's application. In addition, Rosenberg's supervisor, Deborah Gutter, met with Rosenberg and issued either a counseling or a disciplinary notice to her. Mansfield recommended that the time Rosenberg and Druist used to write the application during work hours be recouped by charging it against their leave benefit time.

Plaintiff claimed that almost immediately after she reported the two employees' alleged misconduct, they began to harass her at work. After each of the individuals involved met with Mansfield, Druist commented that "there's a mole in the group" and turned and looked at plaintiff. About a week after

plaintiff "blew the whistle," Rosenberg issued a counseling notice to plaintiff for allegedly leaving work early. A few days later, Rosenberg met with plaintiff's staff in her absence. Plaintiff alleges that the staff members told her that Rosenberg was "looking to dig up some dirt on [her]." That same day, Rosenberg yelled at plaintiff in front of a new employee and told plaintiff's staff they no longer had to account for their overall hours or lunch breaks, which undermined plaintiff's supervisory authority. Plaintiff asserted that Gutter sometimes joined with Rosenberg in criticizing plaintiff.

Plaintiff alleged that this mistreatment continued over the months that followed. Among other things, Rosenberg made demeaning comments about plaintiff's weight, clothing, and jewelry. Rosenberg issued additional counseling notices to plaintiff for infractions she claims did not occur. For the first time, plaintiff's supervisors began to give her poor performance evaluations and changed her work duties.

By March 2014, plaintiff claimed she was suffering from flashbacks, nightmares, and anxiety. Plaintiff's psychologist diagnosed her with Post-Traumatic Stress Disorder (PTSD) and Major Depression. The psychologist opined that plaintiff's disability "stemm[ed] from her work environment" and was so severe that she could no longer work. Between March 2013 and May

2014, plaintiff took three extended leaves of absence. When the psychologist could not provide defendant with a firm date for plaintiff's return to work, defendant terminated her in May 2014.

In May 2015, plaintiff filed a one-count complaint against defendant and alleged defendant discharged her in violation of CEPA in retaliation for having reported Rosenberg's and Druist's alleged misconduct. After discovery was completed, defendant filed a motion for summary judgment. Plaintiff opposed the motion. On April 22, 2019, the motion judge rendered a written decision concluding that plaintiff failed to present a prima facie case under CEPA.

In this regard, the judge found that plaintiff was unable to show she reasonably believed that Rosenberg's and Druist's conduct violated a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy. The judge also concluded that the employees' misconduct was only a "minor infraction."

The judge also found that plaintiff failed to show she suffered retaliation due to her alleged whistle-blowing activity because the poor performance evaluations plaintiff received did not adversely affect her position or salary. The judge also speculated that plaintiff may have received the low scores because she was just beginning a new job.

A-4264-18T2

Finally, the judge found plaintiff did not show her termination was causally related to her alleged whistle-blowing activities because her firing was solely based on her inability to return from her extended leave of absence. The judge also concluded that plaintiff could not recover economic damages for the alleged retaliation or her termination. This appeal followed.

II.

On appeal, plaintiff argues the motion judge erred by granting defendant's motion for summary judgment because: (1) she reasonably believed Rosenberg and Druist were guilty of theft of time, plagiarism, and fraudulent activity; (2) defendant's retaliatory acts constituted adverse employment actions under CEPA; and (3) she was entitled to recover economic damages since her inability to return to work was due to defendant's retaliation. Because plaintiff presented sufficient evidence to establish a prima facie case under CEPA and avoid summary judgment, we agree with plaintiff's contentions and reverse the April 22, 2019 order.

When reviewing an order granting summary judgment, we apply the same standards the trial court applies when ruling on a summary judgment motion. Townsend v. Pierre, 221 N.J. 36, 59 (2015). Thus, we review "the competent evidential materials submitted by the parties to identify whether there are

genuine issues of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014); R. 4:46-2. Summary judgment should be denied unless the moving party's right to judgment is so clear that there is no room for controversy. Akhtar v. JDN Props. at Florham Park, L.L.C., 439 N.J. Super. 391, 399 (App. Div. 2015).

The court's function is not to weigh the evidence to determine the final outcome, but only to decide if a genuine issue of material fact exists. Suarez v. E. Int'l Coll., 428 N.J. Super. 10, 27 (App. Div. 2012). It is not the judge's role to assess credibility or determine the truth of the evidence, DeWees v. RCN Corp., 380 N.J. Super. 511, 522 (App. Div. 2005), or to examine whether the preponderance of the evidence weighs towards one side or the other, Mandel v. UBS/PaineWebber, Inc., 373 N.J. Super. 55, 71 (App. Div. 2004). A motion judge may not abrogate the jury's exclusive role as the finder of fact. Suarez, 428 N.J. Super. at 27.

In this case, plaintiff claims she was subjected to retaliatory acts by defendant in violation of CEPA, which makes it "unlawful for an employer to retaliate against an employee who 'report[s] illegal or unethical workplace activities.'" Donelson v. DuPont Chambers Works, 206 N.J. 243, 256-57 (2011)

(alteration in original) (quoting Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003)). CEPA is designed to "protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employees from engaging in such conduct." Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 431 (1994). Thus, considering this purpose, CEPA claims "should be construed liberally." Ibid.

CEPA prohibits an employer from taking retaliatory action when an employee "[d]iscloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer . . . that the employee reasonably believes" is unlawful or fraudulent. N.J.S.A. 34:19-3(a). Specifically, an activity is unlawful when it "is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ." N.J.S.A. 34:19-3(a)(1). Fraudulent or criminal activity includes "any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employee or any governmental entity." N.J.S.A. 34:19-3(a)(2).

A plaintiff asserting a CEPA claim must establish that:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or

regulation promulgated pursuant to law, or a clear mandate of public policy;

(2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3(c);

(3) an adverse employment action was taken against him or her; and

(4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

[Lippman v. Ethicon, Inc., 222 N.J. 362, 380 (2015) (quoting Dzwonar, 77 N.J. at 462).]

If the plaintiff meets the burden of demonstrating a prima facie case, "the defendant must then come forward to advance a legitimate reason for discharging [the] plaintiff." Massarano v. N.J. Transit, 400 N.J. Super. 474, 492 (App. Div. 2008). If the defendant provides a legitimate reason, the plaintiff must demonstrate why the reason defendant provided for the adverse action is not credible. Kolb v. Burns, 320 N.J. Super. 467, 479 (App. Div. 1999).

With this essential background in mind, we turn to a consideration of each of the four prongs a plaintiff must meet to establish a prima facie case under CEPA.

III.

To satisfy the first prong of CEPA, a plaintiff can either prove that he or she reasonably believed the conduct at issue was contrary to law under N.J.S.A.

34:19-3(a)(1) or was fraudulent under N.J.S.A. 34:19-3(a)(2). See Estate of Roach v. TRW, Inc., 164 N.J. 598, 611 (2000). Fraudulent activity is sufficient to meet CEPA's first prong regardless of whether the activity actually amounts to a crime. Id. at 613. The plaintiff need only reasonably believe that the conduct was fraudulent. Ibid.; see also Gerard v. Camden Cnty. Health Servs. Center, 348 N.J. Super. 516, 523-24 (App. Div. 2002) (finding that while plaintiff could not point to a "particular violation" of law, summary judgment should not have been granted for defendant because plaintiff believed the activity was fraudulent and violated some civil service right).

The New Jersey Supreme Court has recently analyzed CEPA's first prong. See Chiofalo v. State, 238 N.J. 527, 544-45 (2019). In Chiofalo, the Court discussed Battaglia v. United Parcel Serv., Inc., 214 N.J. 518 (2013), which treated fraud as if it "was readily apparent if factually supported," even though plaintiff did not cite a specific law that was violated. Id. at 544. There is "no case that requires plaintiff to precisely cite the statutory source of perceived criminal activity." Ibid.

However, the Court stated that it was "better practice" to identify the legal basis of the criminal or fraudulent activity, even though those activities are "often apparent and commonly recognizable." Ibid. Nonetheless, the Court

11

emphasized that whistleblowers are not expected "to be lawyers on the spot; once engaged in the legal process, and with the assistance of counsel or careful examination by the court, however, the legal underpinnings for claimed behavior that is perceived as criminal or fraudulent should be able to be teased out sufficiently for identification purposes." Id. at 544-45. While there is conduct that is "so obviously criminal that one need not pinpoint a Title 2C provision to avoid dismissal of a CEPA claim," the plaintiff still needs to provide the basis of his or her claim if the defense questions their sources of law. Id. at 545.

Applying these standards, we are satisfied that plaintiff presented sufficient evidence to meet the requirements of the first prong of the CEPA test and survive a motion for summary judgment. Plaintiff reported that Rosenberg and Druist used two days of work time crafting an application that Rosenberg ultimately submitted to the Rutgers nursing school's graduate program as her own work. While plaintiff did not specifically identify a rule, statute, or regulation that the two employees violated, and later cited an ethics rule that did not apply to Rosenberg because she was not yet a student of the graduate school, these citations were not required under the governing case law. Chiofalo, 238 N.J. at 544. Moreover, defendant's own investigation concluded that Rosenberg and Druist were guilty of improper use of work time in view of the counseling

or disciplinary notice Rosenberg received and defendant's decision to recover the value of the work time that was misused by taking it from the employees' accrued leave time.

Just as significantly, the Rutgers nursing school refused to even consider Rosenberg's application for the graduate program allegedly as a result of the investigation of the Child Health Program. This is sufficient evidence that Rosenberg's action of having a subordinate employee write the essay portion for her constituted fraudulent activity under CEPA. The motion judge incorrectly criticized plaintiff because she referred to Druist's and Rosenberg's conduct as "plagiarism." According to the judge, the two employees did not commit plagiarism because Druist gave Rosenberg permission to use her work and present it as her own when Rosenberg turned in her application. However, Rosenberg never notified the graduate school that the application she was representing to be her own work had been prepared by another person. Under these circumstances, plaintiff presented sufficient evidence to permit a jury to determine whether it was reasonable for plaintiff to believe Rosenberg and Druist had engaged in a fraudulent act regardless of the nomenclature used to describe it.

The motion judge also found that the two employees' actions were "minor infractions" that could not satisfy the first prong of CEPA. Again, we disagree.

Minor infractions are generally insufficient to support a finding that the complaining employee had a reasonable belief that fraud or criminal activity had occurred. Roach, 164 N.J. at 613. The Court in Roach observed that "[i]f an employee were to complain about a co-employee who takes an extended lunch break or makes a personal telephone call . . . [it] would be hard pressed to conclude that the complaining employee could have 'reasonably believed' that such minor infractions represented unlawful conduct as contemplated by CEPA." Ibid. CEPA's intent is not to "spawn litigation concerning the most trivial or benign employee complaints," but rather to "protect those employees whose disclosures fall sensibly within the statute." Ibid.

Here, however, Rosenberg's and Druist's alleged misconduct was not a "minor infraction" and, in any event, this factual issue needed to be decided by a jury rather than through a summary judgment motion. Rosenberg allegedly used a subordinate employee to prepare a portion of a graduate school application for her during work time and presented it as her own to the program. The two employees allegedly left two other workers without assistance for two full days while this occurred and collected their regular pay without performing

their assigned duties. Therefore, the motion judge mistakenly granted summary judgment to defendant on this point.

IV.

Turning to prong two, a plaintiff must establish that "he or she performed a 'whistle-blowing' activity described in N.J.S.A. 34:19-3(c)." Lippman, 222 N.J. at 380. A "whistle-blowing" activity "refers to notification, or threatened notification, to an outside agency or supervisor . . . and also permits a claim to be supported by evidence that the employee objected to or refused to participate in the employer's conduct." Tartaglia v. UBS PaineWebber, Inc., 197 N.J. 81, 106 (2008). The whistle-blowing activity must reflect a "threat of public harm, not merely a private harm or harm only to the aggrieved employee." Maw v. Advanced Clinical Commc'n, Inc., 179 N.J. 439, 445 (2004). "Vague and conclusory complaints, complaints about trivial or minor matters, or generalized workplace unhappiness are not the sort of things that the Legislature intended to be protected by CEPA." Battaglia, 214 N.J. at 529-31.

Here, the motion judge found that plaintiff did not satisfy this requirement based solely on the judge's incorrect conclusion that the misconduct plaintiff brought to her employer's attention "was a minor infraction not contemplated under CEPA." As discussed above, however, there is a genuine issue of material

15

fact as to whether the violations plaintiff identified in her call to the hotline were sufficiently serious to warrant the denial of summary judgment. Because plaintiff produced sufficient evidence that she engaged in a whistle-blowing activity as described in N.J.S.A. 34:19-3(c), we reverse the motion judge's grant of summary judgment to defendant on this issue.

V.

We are also convinced that plaintiff presented sufficient evidence to satisfy the third CEPA prong by demonstrating that "an adverse employment action was taken against . . . her" by defendant. Lippman, 222 N.J. at 380. Therefore, we reject the motion judge's contrary conclusion.

Under N.J.S.A. 34:19-2(e), "retaliatory action" is defined as "the discharge, suspension or demotion of any employee, or other adverse employment action taken against an employee in the terms and conditions of employment." "What constitutes an 'adverse employment action' must be viewed in light of the broad remedial purpose of CEPA, and [a court's] charge to liberally construe the statute to deter workplace reprisals against an employee speaking out against a company's illicit or unethical activities." Donelson, 206 N.J. at 257-58.

An adverse employment action can include "making false accusations of misconduct, giving negative performance reviews, issuing an unwarranted suspension, and requiring pretextual mental-health evaluations–causing the employee to suffer a mental breakdown and rendering [the employee] unfit for continued employment." Id. at 258. Additionally, retaliation can be "many separate but relatively minor instances of behavior directed against an employee that may not be actionable individually but that combine to make up a pattern of retaliatory conduct." Green v. Jersey City Bd. of Educ., 177 N.J. 434, 448 (2003).

We believe that plaintiff's retaliatory claims satisfied these standards and raised a genuine issue of material fact that prevented the disposition of this issue on a summary judgment motion. After plaintiff reported Rosenberg's and Druist's misconduct, Druist allegedly announced to the group that there was a "mole" in their midst and then looked at plaintiff. Immediately thereafter, Rosenberg and other supervisors allegedly began a long course of retaliation against plaintiff which included unfounded disciplinary actions, rude and demeaning personal comments, attempts to undermine plaintiff's ability to work with and supervise her staff, and unsupported poor performance evaluations.

17

In concluding that these complaints were not sufficient to satisfy the third CEPA prong, the judge stated she believed defendant's claim that the disciplinary actions and performance ratings the supervisors gave plaintiff for the first time were "well documented." In other words, the judge weighed each party's conflicting factual assertions and determined that defendant's account had more merit. As noted above, however, it is not the judge's role on a summary judgment motion to assess the weight or credibility of the evidence presented. DeWees, 380 N.J. Super. at 522.

Here, the parties' competing factual claims as to the retaliatory nature of the acts taken by defendant after plaintiff engaged in a whistle-blowing activity could not properly be resolved on summary judgment. Therefore, we conclude the judge erred in her analysis of this prong of the CEPA test.

## VI.

To satisfy the fourth prong of the CEPA test, a plaintiff must demonstrate that "a causal connection exists between the whistle-blowing activity and the adverse employment action." Lippman, 222 N.J. at 380. A causal connection "can be satisfied by inferences that the trier of fact may reasonably draw based on circumstances surrounding the employment action." Maimone v. City of Atl. City, 188 N.J. 221, 237 (2006) (citing Roach, 164 N.J. at 612). Therefore, the

18

plaintiff does not need to show a "direct causal link" between the whistle-blowing activity and the retaliation. Battaglia, 214 N.J. at 558. "The temporal proximity of employee conduct protected by CEPA and an adverse employment action is one circumstance that may support an inference of a causal connection." Maimone, 188 N.J. at 237.

Based upon our de novo review of the record, we conclude that plaintiff presented sufficient evidence to meet the requirements of the fourth prong and thereby survive defendant's summary judgment motion. Prior to reporting Rosenberg's and Druist's misconduct to the hotline, plaintiff was treated as a valued employee and had recently been promoted. Immediately after Druist allegedly announced there was a "mole" in the group, plaintiff claimed that Rosenberg began to discipline her, interfered with her new supervisory duties, made rude comments to her about her personal appearance, and reduced her performance ratings.

In concluding that plaintiff failed to meet this prong, the motion judge accepted defendant's assertion that all of the actions taken against plaintiff after she "blew the whistle" were due to her poor performance, and the judge discounted plaintiff's claim that these were unlawful retaliatory acts under CEPA. The judge also found that plaintiff was only dismissed because she was

unable to return to work by a date certain based solely upon defendant's allegation that this was so.

As previously noted, however, a judge may not abrogate the jury's exclusive role as the finder of fact. Suarez, 428 N.J. Super. at 27. Because plaintiff presented sufficient evidence to raise a genuine issue of material fact on this and the other CEPA prongs, the judge should have denied defendant's motion for summary judgment.

VII.

Finally, we also agree with plaintiff that the motion judge erred by finding she was unable to show that she suffered economic damages as a result of defendant's conduct. "If the employer's retaliatory action is the proximate cause of the employee's mental unfitness for duty, then CEPA grants the employee '[a]ll remedies available in common law tort actions . . . .'" Donelson, 206 N.J. at 258 (quoting N.J.S.A. 34:19-5). This includes "compensation for all lost wages, benefits, and other remuneration." Id.

In Donelson, the plaintiff filed a complaint under the Occupational Safety and Health Act (OSHA), 29 C.F.R. § 1926.652, because his employer's workplace had "highly toxic" materials in it. Id. at 387. Thereafter, the plaintiff received negative performance reviews, false accusations, harassment, and was

20

forced to work twelve hour shifts in isolation. Id. at 248-50. As a result, plaintiff suffered a mental breakdown, took a six-month leave of absence, and never returned to work. Id. at 247. Under these circumstances, the Supreme Court held that the jury's award of economic damages to the plaintiff was appropriate. Id. at 263.

Here, the motion judge held that plaintiff's case was factually distinguishable from Donelson, primarily because the judge believed plaintiff's claim was based on minor infractions not subject to CEPA. The judge also reasoned that unlike in Donelson, plaintiff did not show a connection between the adverse employment actions and her alleged whistle-blowing. While the OSHA violation in Donelson was arguably more severe than the misconduct plaintiff observed and reported in this case, the motion judge mistakenly minimized the connections between plaintiff's case and Donelson. Like in Donelson, plaintiff faced harassment, allegedly false accusations, alterations to her work schedule due to her performance ratings, and negative performance reviews, all of which contributed to her psychologist's diagnosis of plaintiff's PTSD and depression.

Additionally, the motion judge misinterpreted Donelson's holding on constructive discharge. The judge stated that "a major aspect of the Donelson

case was that there the [p]laintiff's suspension constituted a constructive discharge for purposes of receiving back and front pay." However, the Court expressly held that "lost wages are recoverable in a CEPA case, even in the absence of a constructive discharge," and CEPA's provisions do not "intimate that a constructive discharge is the only basis for a lost-wage claim in the circumstances before us." Id. 261, 263.

Here, plaintiff presented sufficient evidence that defendant's retaliatory actions proximately caused her to go on the extended leaves recommended by her doctor and caused her compensable emotional distress. Defendant sharply disputed this evidence. However, that dispute should have been resolved by a trial rather than on a summary judgment motion. Therefore, we conclude that defendant's motion for summary judgment should have been denied.

## VIII.

In sum, we conclude that the genuine issues of material fact raised by the parties could not be adjudicated on a motion for summary judgment. Therefore, we reverse the April 22, 2019 order granting defendant's motion for summary judgment and remand for further proceedings.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4264-18T2