**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3896-19

MELODY N. VILLANUEVA-
ARROYO,

      Plaintiff-Appellant,

v.

HOUSING AUTHORITY OF THE
CITY OF PASSAIC and VICTOR
CIRILO, individually and in his
capacity as the Executive Director
of the Housing Authority of the
City of Passaic,

      Defendants-Respondents.

_____

Submitted May 10, 2021 – Decided June 3, 2021

Before Judges Fasciale and Rothstadt.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-0974-15.

Angelo R. Bisceglie, Jr., attorney for appellant.

Keenan & Doris, LLC, attorneys for respondents (Erdal Turnacioglu, of counsel and on the brief).

PER CURIAM

In this employment discrimination case, plaintiff—a former employee of defendant Housing Authority of the City of Passaic (Housing Authority)— appeals from three orders entered on remand.[1]  The first order is dated August 14, 2019 and denied plaintiff's motion to change venue or recuse a judge.  The remaining orders, dated June 10, 2020, denied plaintiff's cross-motion for summary judgment and granted the Housing Authority and Victor Cirilo's (Cirilo) motion for summary judgment dismissing plaintiff's remaining Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14, wrongful termination, and due process claims.

We rely on the facts as set forth in our previous opinion regarding the circumstances surrounding the award of two general construction contracts to SAAR Construction, LLC (SAAR) and plaintiff's subsequent termination. Villanueva-Arroyo, slip op. at 3-8.

---

[1] Defendant successfully obtained dismissal of the remaining count in the complaint. See Villanueva-Arroyo v. Hous. Auth., No. A-4752-16 (App. Div. Sept. 25, 2018) (slip op. at 3) (reversing discovery orders, reversing summary judgment on plaintiff's CEPA and wrongful termination claims, but upholding summary judgment dismissing plaintiff's allegation that defendants violated the New Jersey Family Medical Leave Act, N.J.S.A. 24:11B-1 to -16).

On appeal, plaintiff argues:

POINT I

THE [JUDGE] BELOW ERRED IN GRANTING DEFENDANTS SUMMARY JUDGMENT AND FURTHER ERRED IN DENYING PLAINTIFF PARTIAL SUMMARY JUDGMENT.

A.  The [Judge] Erred [I]n Failing [T]o Enforce Defendants Compliance With Rule 4:46-2.

B.  The [Judge] Erred [I]n Dismissing Plaintiff's CEPA Claim.

C.  The [Judge] Erred [I]n Dismissing Plaintiff's Wrongful Termination Claim.

1. The [Judge] Misapplied The Law When [He] Failed [T]o Consider [A]n Implied Employment Contract.

2. The [Judge] [M]isapplied [T]he Waiver Provision [O]f [T]he CEPA.

D.  The [Judge] Erred [I]n Dismissing Plaintiff's Violation of Due Process Claim

POINT II

[PLAINTIFF] REQUESTS A CHANGE OF VENUE.[2]

---

[2] We reject plaintiff's argument that the judge abused his discretion by denying plaintiff a change of venue and the recusal of a judge.  Plaintiff failed to establish that she could not obtain an impartial adjudication in Passaic County and not did

3

We conclude the judge properly entered summary judgment and dismissed plaintiff's claims because plaintiff failed to establish a prima facie CEPA claim, is barred from asserting a wrongful termination claim under the CEPA waiver provision, and does not have a property right entitling her to due process protection.

We therefore affirm all three orders.

I.

We first address plaintiff's contention that the judge erred by granting summary judgment to the Housing Authority and Cirilo and dismissing her CEPA claim. Plaintiff argues the judge failed to consider her disclosures and objection to the contract being awarded, and to SAAR's continued performance of the contract, as potential whistleblowing activities.

We review a ruling on a motion for summary judgment de novo and apply the same standard as the trial judge. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016). Thus, we consider, as the motion judge did, "whether the competent evidential materials presented, when viewed

set forth proof that the judge was biased against her or her counsel. Importantly, a different judge heard the summary judgment motions which form the basis of this appeal.

A-3896-19

in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

If the judge finds no genuine issue of material fact, the judge must then "decide whether the trial [judge] correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)). We review issues of law de novo, affording no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013). For mixed questions of law and fact, we defer to the trial judge's supported factual findings, but review application of legal rules to such factual findings de novo. State v. Pierre, 223 N.J. 560, 577 (2015).

Under this standard, a judge must grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "To defeat a motion for summary judgment, the opponent must '"come forward with evidence" that creates a genuine issue of material fact.'" Cortez v. Gindhart, 435 N.J. Super. 589, 605

(App. Div. 2014) (quoting <u>Horizon Blue Cross Blue Shield of N.J. v. State</u>, 425 N.J. Super. 1, 32, (App. Div. 2012)).

CEPA seeks to "protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." <u>Hitesman v. Bridgeway, Inc.</u>, 218 N.J. 8, 27 (2014) (quoting <u>Dzwonar v. McDevitt</u>, 177 N.J. 451, 461 (2003)); <u>accord</u> <u>Sauter v. Colts Neck Volunteer Fire Co. No. 2</u>, 451 N.J. Super. 581, 588 (App. Div. 2017). CEPA prohibits employers from retaliating against employees who perform a whistleblowing activity. N.J.S.A. 34:19-13; <u>see also</u> <u>Lippman v. Ethicon, Inc.</u>, 222 N.J. 362, 378 (2015). To establish a prima facie CEPA claim, a plaintiff must demonstrate that:

> (1) [H]e or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy;
>
> (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3[(a) or (c)];
>
> (3) an adverse employment action was taken against him or her; and
>
> (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.
>
> [<u>Lippman</u>, 222 N.J. at 380 (quoting <u>Dzwonar</u>, 177 N.J. at 462)].

6

To satisfy the first element of a CEPA claim, a plaintiff "must identify a statute, regulation, rule, or public policy that closely relates to the complained-of conduct." Dzwonar, 177 N.J. at 463. A plaintiff "need not show that his or her employer or another employee actually violated the law or a clear mandate of public policy," id. at 462, or that the conduct is "an actual violation of a law or regulation," Estate of Roach v. TRW, Inc., 164 N.J. 598, 613 (2000). The plaintiff only needs to show that he or she "'reasonably believe[d]' that to be the case." Ibid. However, if the judge finds no law or policy that closely relates to complained-of conduct, the judge "can and should enter judgment for [the] defendant." Dzwonar, 177 N.J. at 463.

The second element of a CEPA claim requires the plaintiff to prove he or she performed a whistleblowing activity. Lippman, 222 N.J. at 380. An employee performs a protected whistleblowing activity if he or she:

> Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, or another employer, with whom there is a business relationship, that the employee reasonably believes:
>
> > (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ; or

A-3896-19

(2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation[.]

[N.J.S.A. 34:19-3(a).]

Or, relevant to this appeal:

Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ; or

(2) is fraudulent or criminal . . . ; or

(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

[N.J.S.A. 34:19-3(c).]

Third, a CEPA plaintiff must demonstrate he or she suffered an adverse employment action. Lippman, 222 N.J. at 380. CEPA defines retaliation as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. 34:19-2(e). Finally, to satisfy the fourth element of CEPA, a plaintiff must demonstrate "a causal connection . . . between the whistle-blowing activity and the adverse employment action." Dzwonar, 177 N.J. at 462. To determine

if a plaintiff has established causation, judges should focus on the "circumstances surrounding the employment action," including temporal proximity between the protected conduct and the adverse employment action. Maimone v. City of Atl. City, 188 N.J. 221, 237 (2006). A CEPA plaintiff can establish causation by providing "evidence of circumstances that justify an inference of retaliatory motive." Romano v. Brown & Williamson Tobacco Corp., 284 N.J. Super. 543, 550 (App. Div. 1995); see also Estate of Roach, 164 N.J. at 612.

Here, plaintiff failed to establish a prima facie claim under CEPA. As a matter of law, the record reflects that plaintiff believed that the Housing Authority would be violating the Local Public Contract Law (LPCL), N.J.S.A. 40A:11-1, by awarding the contract to SAAR. On our review, plaintiff did not hold an objectively reasonable belief that an illegal activity occurred related to the SAAR contract. Plaintiff acknowledged herself that, despite verbal complaints before public bidding, she was required to award the contract under the LPCL. Specifically, plaintiff testified as to the statutorily mandated bid procedure as follows

> Q: To your knowledge[,] what would you have to prove to actually reject the lowest bid based on these verbal complaints of shoddy work?

A-3896-19

A: I needed more than that[,] than the verbal. I would have to have concrete evidence that [SAAR] was not a good contractor to be able to reject it.

. . . .

Q: Does the term "prior negative experience" mean anything to you?

A: Yes.

Q: What does it mean?

A: That means if there was negative experience prior to the job.

Q: Do you have an impression as to what level the prior negative experience has to be before it could justify rejecting a low bid?

A: I would believe it would have to be something substantial and in writing with some type of evidence to show that, other than verbal.

Plaintiff cannot establish the first prong where she is both familiar with the LPCL and admitted that there was, in fact, no legal basis to disqualify SAAR. It is worth noting that less than one year later, and even after further complaints about the company's workmanship, plaintiff recommended SAAR for a second contract.

As to the second prong, plaintiff failed to establish that she engaged in a whistleblowing activity in accordance with N.J.S.A. 24:19-3(a) or (c). Plaintiff

10

contends that the judge misapplied the statute by only analyzing her refusal to participate and failed to consider her objections and disclosures. As to this point, the judge found that

> Although <u>Donofry v. Autotote Sys., Inc.</u>, 250 N.J. Super. 276, 288 (App. Div. 2001)[,] indicates that a CEPA plaintiff's involvement in the violative activity does not per se bar recovery, the truth here is that the [p]laintiff's actions in, as applied, objecting to the actions must rise to more than mere disagreements to vault the threshold at summary judgment. <u>Young[ v. Schering Corp.</u>, 275 N.J. Super. 221, 236-37 (App. Div. 1994)]. As a threshold matter, the record fails to establish that [plaintiff] objected to the conduct that [the Housing Authority] undertook in awarding the contract.

Plaintiff's initial objection to the award of the contract to SAAR does not constitute whistleblowing. Plaintiff herself erroneously included prevailing wage rates in the bid application. She testified that "the bid was . . . already out, so [she] couldn't pull the bid back in, but there's wasn't enough time from the time [she] got the rates, so [she] had to move forward with it." Plaintiff cannot claim she blew the whistle on grounds that the Housing Authority would be overpaying when she knew that no policy was being violated. In fact, plaintiff knew that the LPCL required she move forward with the contract, given its strict bidding procedures, notwithstanding her own error.

11

Plaintiff did in fact disclose SAAR's substandard work to Cirilo. Plaintiff cites to a memo from another employee advising Cirilo and Wynter of the substandard conditions. Plaintiff testified that she sent e-mails and pictures "to memorialize [what she] was doing so there was no doubt that I was following the contractors." She further testified

> Q: Okay, you blew the whistle on SAAR, did you not?
>
> A: When I told [Cirilo] that the mangers did not like the work and that the work wasn't good, if that's the term that goes with that, yes, then I did.

Given this testimony, and from a review of the record, plaintiff's communications were for the purpose of doing her diligence, rather in objection to SAAR's continuation, which is insufficient under the case law. Young, 275 N.J. Super. at 236-37. Such claims were not expressly tied to any allegation of illegality or any violation of public policy. Her subsequent recommendation to award a second contract to SAAR in July 2014 after complaints about their workmanship persisted belies the concerns she raised about SAAR's quality, a potential wasting of Federal funding, and other issues. The judge therefore properly dismissed plaintiff's CEPA claim.

12

II.

We next address plaintiff's contention that the judge erred in dismissing her wrongful termination claim. Defendant argues that plaintiff's claim is barred by CEPA's waiver provision. Plaintiff argues the waiver provision does not apply and that dismissal was improper because the Housing Authority Employee Handbook (the Handbook) created an implied employment contract which required that the Housing Authority implement progressive discipline before terminating her. We conclude that plaintiff's wrongful termination claim is barred by the CEPA waiver provision and, even if it was not, it fails on the merits because plaintiff is an at-will employee.

Under CEPA's waiver provision, "the institution of an action in accordance with [CEPA] shall be deemed a waiver of the rights and remedies available . . . under the common law." N.J.S.A. 34:19-8. Thus, "[p]arallel claims based on those rights, privileges and remedies are waived because they represent multiple or duplicative claims based on retaliatory discharge." Young v. Schering Corp., 141 N.J. 16, 29. (1995). The waiver provision does not apply to claims that are substantially independent of a CEPA claim. Id. at 33. A claim is substantially independent from a retaliatory discharge claim when, like here, it "require[s] different proofs than those needed to substantiate [a] CEPA claim."

Id. at 31 (quoting Young, 275 N.J. Super. at 238); see e.g., Royster v. NJ State Police, 227 N.J. 482, 498 (2017) (explaining that the Law Against Discrimination claim at issue was premised on the failure of New Jersey State Police to accommodate plaintiff's ulcerative colitis, not retaliation, thus CEPA's waiver provision was not at bar).

Here, plaintiff's wrongful termination claim and CEPA claims stem from the same alleged retaliatory conduct. Plaintiff waived her right to seek relief for wrongful termination when she instituted the cause of action alleging a CEPA claim. Even if plaintiff's claim was not barred—which is not the case—the judge properly dismissed it on the merits.

Employment is presumed to be at-will, unless specifically stated in explicit, contractual terms. Witkowski v. Thomas J. Lipton, Inc., 136 N.J. 385, 397 (1994). Employee handbooks or manuals can form implied contracts. Id. at 392. In Woolley v. Hoffmann-La Roche, 99 N.J. 284, 285-86 (1985), which governs this implied contract issue, our Court held that an implied promise contained in an employment manual—like the Handbook here—is enforceable against an employer absent a clear and prominent disclaimer. Our Court directed that "[w]hen an employer . . . circulates a manual that, when fairly read, provides that certain benefits are an incident of the employment (including, especially,

14

job security provisions), [judges should enforce that handbook or manual] in accordance with the reasonable expectations of employees." Id. at 297-98. The Court further emphasized that "if the employer, for whatever reason, does not want the [handbook] to be capable of being construed by the [judge] as a binding contract, there are simple ways to attain that goal. All that need be done is the inclusion in a very prominent position of an appropriate statement that there is no promise of any kind by the employer contained in the manual." Id. at 309.

We must scrutinize the Handbook to determine whether there exists a disclaimer that clearly states that the Handbook is neither a promise nor a contract and that employment is at-will. Ibid.; see Nicosia v. Wakefern Food Corp., 136 N.J. 401, 415 (1994) (explaining that when a disclaimer is included it must be set off in a manner that draws the employee's attention).

The Handbook indeed contains a progressive discipline policy. It provides that "[d]isciplinary action will be taken by the employee's immediate supervisor based upon the following factors: [s]eriousness of the offense, employee's past record, the employee's ability to correct his other conduct, [and] the likelihood of positive responses to guidance by supervisory personnel." It also states that "based upon the supervisor's review of the aforesaid criteria he or she may impose the following discipline: (a) oral warning with documentation

in the employee's file (b) written warning (c) suspension of more than five working days [or] (d) termination." (emphasis added).

The Handbook also states that "[i]n the event that a supervisor recommends termination . . . an employee shall be afforded the opportunity for a hearing prior to imposition of the discipline." Importantly, it contains four disclaimers indicating that it does not create an employment contract, that no individual could offer a contract of employment without approval of the Executive Director of the Housing Authority, and, most importantly, that plaintiff's employment is at-will. The first disclaimer is included in the introduction letter to the Handbook and reads as follows

> Neither this handbook nor any other [Housing Authority] document, confers any contractual right, either express or implied, to remain in the [Housing Authority's] employ. Nor does it guarantee any fixed terms and conditions of your employment. The provisions of the Employee Handbook may be amended and supplemented from time to time without notice and at the sole discretion of the [Housing Authority] Board of Commissioners.

The second disclaimer appears on the third page of the Handbook. It is located on its own page between the Table of Contents and section titled "General Personnel Policy." The disclaimer is capitalized, double-spaced, and in bold font. It states that

THE CONTENT OF THIS HANDBOOK ARE GUIDELINES ONLY AND SUPER[S]EDE ANY PRIOR MANUAL AND/OR HANDBOOK. NEITHER THIS MANUAL NOR ANY OTHER GUIDELINES, POLICIES OR PRACTICES CREATE AN EMPLOYMENT CONTRACT. [THE HOUSING AUTHORITY] HAS THE RIGHT, WITH OR WITHOUT NOTICE, IN AN INDIVIDUAL CASE OR GENERALLY, TO CHANGE ANY OF ITS GUIDELINES, POLICIES, PRACTICES, WORKING CONDITIONS OR BENEFITS AT ANY TIME.

NO ONE IS AUTHORIZED TO PROVE ANY EMPLOYEE WITH AN EMPLOYMENT CONTRACT OR SPECIAL ARRANGEMENT CONCERNING TERMS OF CONDITIONS OF EMPLOYMENT UNLESS THE CONTRACT OR ARRANGEMENT IS IN WRITING AND SIGNED BY THE EXECUTIVE DIRECTOR. EMPLOYMENT WITH [THE HOUSING AUTHORITY] IS AT-WILL AND MAY BE TERMINATED AT ANY TIME CAUSE OR NOTICE BY THE EMPLOYEE OR [THE HOUSING AUTHORITY].

THIS NOTICE APPLIES TO ALL EMPLOYEES REGARDLESS OF DATE OF HIRE.

The third disclaimer, which clearly sets forth that employment with the Housing Authority is "at-will," appears on the following page, under the section titled "General Personnel Policy." It is emphasized in its own textbox and reads

The Personnel Policies and Procedures Manual adopted by the Board of Commissioners are intended to provide guidelines covering public service by the [Housing Authority] employees and is not a contract. This

17                                                          A-3896-19

manual contains many, but not necessarily all of the rules, regulations, and conditions of employment for [Housing Authority] personnel. The provisions of this manual may be amended and supplemented from time to time without notice and at the sole discretion of the [Housing Authority].

To the maximum extent permitted by law, the employment practices of [the Housing Authority] shall operate under the legal doctrine known[] as "employment at[-]will." Within Federal and State law . . . . [the Housing Authority] shall have the right to terminate an employee at any time and for any reason, with or without notice, except [the Housing Authority] shall comply with all Federal and State legal requirements requiring notice and an opportunity to be heard in the event of discipline or dismissal.

A reading of the disciplinary process portion of the Handbook might lead an employee to expect that they would not immediately be fired, but the processes listed, which may be followed, do not speak to job security or employment status. Here, the clear at-will employment language and included disclaimers remove any implication that an expectation of plaintiff's continued employment existed. As such, no implied contract exists under Woolley and the judge properly dismissed plaintiff's wrongful termination claim.

III.

Finally, we address plaintiff's contention that the judge erred by dismissing her due process claim. Plaintiff's due process arguments align with

18

those advanced in support of her wrongful termination claim and hinge on the same Handbook procedures, which plaintiff argues the Housing Authority improperly executed.

We analyze allegations under the New Jersey Civil Rights Act (CRA), N.J.S.A. 10:6-1 to -2, the same as claims under 42 U.S.C. § 1983. See Gormley v. Wood-El, 218 N.J. 72, 97-98 (2014). N.J.S.A. 10:6-2(c) provides, in relevant part, that:

> [a]ny person who has been deprived of any substantive due process . . . rights, privileges or immunities secured by the Constitution or laws of the United States, or . . . of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation, or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

To obtain relief under the substantive component of the due process clause for deprivation of property, a plaintiff must establish (1) that she has a protected property interest under the due process protection of the Constitution; and (2) that defendants' behavior in "depriving [her] of the interest in question was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Desi's Pizza Inc. v. City of Wilkes-Barre, 321 F.3d 411, 427 (3d Cir. 2003) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8

(1998)).  Pertinent to this appeal, "an employee hired at will has no protected interest in his [or her] employment and may not prevail on a claim that his or her discharge constituted a violation of property rights."  Morgan v. Union Cty. Bd. of Chosen Freeholders, 268 N.J. Super. 337, 355 (App. Div. 1993) (citing Bd. of Regents v. Roth, 408 U.S. 564, 578 (1972)).

Here, plaintiff is clearly an at-will employee.  For the reasons stated above, the Handbook does not create a contract with the Housing Authority and explicitly disclaims any expectation of plaintiff's retained employment.  She therefore does not have a property right as required to establish a substantive due process violation under the CRA.  At best, and in the light most favorable to plaintiff, her recourse would be through a procedural due process violation because the Housing Authority denied her an impartial hearing.  This claim could only exist, however, if the Handbook provided for binding application of the procedures set forth in it, which it clearly does not.  Even if the Handbook mandated a hearing—which is not the case—the CRA does not provide a remedy for procedural due process violations.  See Tumpson v. Farina, 218 N.J. 450, 477 (2014).  As such, the judge properly dismissed plaintiff's due process claim.

To the extent we have not addressed plaintiff's remaining arguments, we conclude that they are without merit to warrant discussion in a written decision. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION