**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3036-22

JOSHUA CUMMIS,

    Plaintiff-Appellant,

v.

TOWNSHIP OF MAPLEWOOD &
ALL MEMBERS OF THE TOWNSHIP
COMMITTEE OF THE TOWNSHIP
OF MAPLEWOOD, individually and
in their official capacities, VICTOR
DELUCA, NANCY J. ADAMS, INDIA
LARRIER, FRANK MCGEHEE, and
GREGORY LEMBRICH,

    Defendants-Respondents.

_____

Argued October 10, 2024 – Decided October 18, 2024

Before Judges Mawla and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-6341-17.

Jeffrey Daniel Catrambone argued the cause for appellant (Sciarra & Catrambone, LLC, attorneys; Jeffrey Daniel Catrambone, of counsel and on the briefs).

Dominick Joseph Bratti argued the cause for respondents (Bratti Greenan, LLC, attorneys; Dominick Joseph Bratti and Annemarie Terzano Greenan, of counsel and on the brief).

PER CURIAM

Plaintiff Joshua Cummis appeals from a May 22, 2023 order granting defendants Township of Maplewood, township mayor Victor DeLuca, and township committee members Nancy J. Adams, India Larrier, Frank McGehee, and Gregory Lembrich summary judgment. We affirm.

We take the facts from the summary judgment record. Plaintiff worked for the Maplewood Police Department for twenty-five years and held the rank of captain when he retired on September 1, 2017. On July 5, 2016, following Maplewood's Fourth of July celebration and fireworks display, members of the Maplewood and Irvington Township police departments, including plaintiff, responded to an incident involving a large group of juveniles. There had been a physical altercation, and police were called to intervene and disperse the crowd. According to the evidence, the crowd was "assembled or proceeding in a roadway, obstructing traffic, using profanity[,] and engaging in physical altercations."

Plaintiff supervised the response to the crowd. He radioed his colleagues to "'maintain the border' and 'asked for mutual aid.'" He also "advised dispatch [of the] direction that the group of juveniles . . . were heading." "The incident resulted in arrests and resistance to arrest, including possibly an assault on an officer." An officer "used [pepper spray] to aid in breaking up the physical altercations and dispersing the crowd." Lembrich testified at deposition the use of pepper spray was "deemed appropriate" under the circumstances.

Citizens and community groups alleged the Maplewood police engaged in racial profiling and used excessive force during the incident. The matter was referred to the prosecutor's office to investigate plaintiff's and the police chief's conduct. The prosecutor's office "determined there was not sufficient evidence to warrant either criminal charges or administrative discipline against [plaintiff] or the [c]hief." Nonetheless Lembrich characterized the public scrutiny as "the big sword hanging over [the township committee's] heads . . . ."

On August 1, 2017, the Maplewood Township Committee adopted a resolution expressing "no confidence" in the chief and suspended plaintiff by placing him on administrative leave. Plaintiff was already due to retire in one month and the retirement had been approved before his suspension. There was

no disciplinary proceeding or internal affairs investigation regarding plaintiff's suspension, nor was an investigation conducted into the July 2016 incident.

At an August 21, 2017 committee meeting, Lembrich inquired about "affirmatively terminat[ing] [plaintiff]'s employment . . . ." Plaintiff's attorney had represented that plaintiff "would pull the retirement papers back." DeLuca stated the objective at the meeting was "to make sure that [plaintiff] doesn't come back to work on September 1, 2017[,] and that the . . . [c]ommittee is going to continue to work on his separation from the [p]olice [d]epartment."

On August 22, 2017, Lembrich emailed a local news reporter stating: "When the [township committee] placed [plaintiff] on [a]dministrative [l]eave . . . it was based on his plan to retire effective September 1[]." He further stated: "It is the [committee]'s desire to not have [plaintiff] return to the Maplewood Police Department."

In June 2017, plaintiff accepted a job as a security guard at a private school for the 2017-18 and 2018-19 school years. He began working there in August 2017 in anticipation of his retirement. In October 2018, the school terminated him because it received "an anonymous call stating that the school was employing a racist. A parent also contacted the [h]ead of [s]chool expressing concern about a newspaper account of allegations of racism against [plaintiff]

by the [t]ownship."  The head of the school confirmed although he did not meet with the anonymous caller, he believed the best course of action was to "pay [plaintiff] through the year as his contract suggested but not have him on campus," and not renew his contract.  There was no evidence of an issue related to plaintiff's performance as a security officer at the time he was terminated.

Plaintiff sued defendants, alleging violations of the New Jersey Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14, and the New Jersey Civil Rights Act (CRA), N.J.S.A. 10:6-1 to -2.  Defendants moved for summary judgment.

On May 22, 2023, the motion judge issued a written opinion granting defendants summary judgment and dismissing plaintiff's complaint.[1]  The judge found plaintiff's CEPA claim failed because he did not show "he either objected to or refused to comply with an identifiable order, directive, practice or policy of the [t]ownship's [p]olice [d]epartment that he reasonably believed violated or was incompatible with a law, regulation or clear mandate of public policy" during the July 2016 incident.  This is because there was "no evidence of any such order, directive, policy or practice in existence at the time of the incident

_____

[1] The judge only addressed the CEPA claim because plaintiff withdrew his CRA claim.

A-3036-22

and [plaintiff's] claimed enforcement of the law in opposition or resistance to the same. No rational trier of the facts could or would conclude otherwise."

The judge rejected plaintiff's argument the township violated CEPA by retaliating against him for doing his job and enforcing the law during the July 2016 incident. Plaintiff pointed to no authority "in New Jersey or elsewhere, that validates such an argument." Moreover, there was no evidence that when he was disciplined by the township, "however improper that discipline was[, that] it did so in retaliation for [plaintiff's] prior objection to or refusal to abide by a policy, practice, procedure[,] or order . . . in effect in July 2016, to withhold strict enforcement of the law in circumstances such as occurred on that evening."

According to the judge, plaintiff's argument was that an "employee faced with discipline . . . [could] seek relief under the CEPA by contending that the discipline itself represents an acknowledgment, ratification[,] or post facto adoption of a practice or policy that is illegal[,] and to which the employee was objecting when [they] undertook the action for which [they are] being disciplined." He concluded neither the text nor the purpose of CEPA contemplated such an interpretation.

I.

Plaintiff claims summary judgment was improperly granted because there were genuine issues of material fact. He asserts the CEPA claim should have survived dismissal because there was evidence he had reasonable belief of a "violation of a law, or rule or regulation promulgated pursuant to law" which he objected to or refused to participate in. He contends the law does not require that he have specific knowledge of the law he believed was being violated.

Moreover, the CEPA claim did not depend on whether he could show defendants violated the law or policy in question. It was enough that plaintiff had an objectively reasonable belief criminal laws were being violated during the July 2016 event, and he objected to the violations by enforcing the law and not being derelict in his duties.

Plaintiff repeats the claim defendants retaliated against him for doing his job. He notes Lembrich testified that police intervention was required during the incident, and the response was "appropriate." If plaintiff failed to do his job, he would be subject to criminal liability, under N.J.S.A. 2C:30-2(a). Plaintiff argues our Supreme Court has defined whistleblowing conduct broadly under CEPA, and the judge's application of the statute was overly rigid and illogical.

A-3036-22

Plaintiff claims defendants illegally removed him from his position in violation of N.J.S.A. 40A:14-147, which bars the removal of an officer "for any cause other than incapacity, misconduct, or disobedience of rules and regulations established for the government of the police department and force . . . ." The statute establishes a procedure for disciplining an officer, including the service of process and hearing of disciplinary matters involving officers, which defendants ignored. Defendants also violated the statute by illegally suspending and vowing to terminate plaintiff from his position. The suspension violated due process because defendants removed him without charges, just cause, notice, or a hearing.

Plaintiff contends summary judgment was inappropriate because there were issues of material fact regarding the fourth prong of CEPA (causation), which requires evidence of an employer's intent, that only a jury could decide. His suspension, Lembrich's comment the incident was "the big sword hanging over [the committee's] heads," and the fact the township committee was concerned about "backlash from the community" were all prima facie evidence of defendant's intent to retaliate, which should have been presented to a jury.

II.

We review a ruling on a summary judgment motion de novo, applying the same standard governing the trial court. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins., 224 N.J. 189, 199 (2016). We consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). We view the facts in the light most favorable to the non-moving party, giving them the benefit of all favorable inferences. Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (citing R. 4:46-2(c)).

If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)). The

"trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference" and are reviewed de novo. Est. of Hanges v. Metro. Prop. & Cas. Ins., 202 N.J. 369, 382 (2010).

"The Legislature enacted CEPA to 'protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct.'" Dzwonar v. McDevitt, 177 N.J. 451, 461 (2003) (quoting Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 431 (1994)). As a remedial statute, CEPA "promotes a strong public policy of the State and . . . should be construed liberally to effectuate its important social goal." Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 555 (2013) (quoting Abbamont, 138 N.J. at 431).

CEPA prohibits employers from taking "any retaliatory action" against an employee who:

> a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, or another employer, with whom there is a business relationship, that the employee reasonably believes:
>
> > (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ; or
> >
> > (2) is fraudulent or criminal . . . ;

A-3036-22

b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer . . . ; or

c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ;

> (2) is fraudulent or criminal . . . ; or

> (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

[N.J.S.A. 34:19-3.]

To establish a prima facie case under CEPA, a plaintiff must prove each of the following:

> (1) [they] reasonably believed that [their] employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy;

> (2) [they] performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3(c);

> (3) an adverse employment action was taken against [them]; and

> (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

[Lippman v. Ethicon, Inc., 222 N.J. 362, 380 (2015)
(quoting Dzwonar, 177 N.J. at 462).]

"The evidentiary burden at the prima facie stage is 'rather modest . . . .'" Zive v. Stanley Roberts, Inc., 182 N.J. 436, 447 (2005) (quoting Marzano v. Comput. Sci. Corp., 91 F.3d 497, 508 (3d Cir. 1996)).[2]

The motion judge correctly found plaintiff had no prima facie case under CEPA as a matter of law. The evidence, viewed in a light most favorable to plaintiff, convinces us a rational factfinder would not resolve the claim in plaintiff's favor. Brill, 142 N.J. at 540. Summary judgment was properly granted to defendants.

Plaintiff's claimed whistleblowing activity is that he objected to a general policy of "dereliction of his duties" on July 5, 2016, as incompatible with the public policy of enforcing the law. He also objected to the unlawful misconduct by the crowd and therefore performed a whistle-blowing activity by doing his job and enforcing the law. However, this does not a CEPA claim make.

Plaintiff's argument fundamentally misreads CEPA and the law, because he did not engage in whistleblowing activity. He did not: disclose or threaten

---

[2] Once a prima facie case is established under CEPA, a burden shifting process begins as more fully described in Allen v. Cape May Cnty., 246 N.J. 275, 290-91 (2021). We dispense with a discussion of the burden shifting, given the lack of a prima facie case.

to disclose an activity, policy, or practice that violates a law or is fraudulent or criminal; provide information to or testify during an investigation, hearing, or inquiry into violation of law; or object or refuse to participate in any activity, policy, or practice he believed was in violation of a law or rule, is fraudulent or criminal, or is "incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment." N.J.S.A. 34:19-3(a)-(c).

A plaintiff must establish all four of the Lippman factors to have a prima facie case under CEPA. 222 N.J. at 380. Although under the modest evidentiary burden of CEPA one could argue plaintiff has shown defendants took adverse action against him as a result of the July 2016 incident, he failed to establish: the police department was violating a law, rule, or regulation, as the only persons he believed violated the law were those arrested July 5, 2016; or that he performed any of the whistle-blowing activities enumerated in N.J.S.A. 34:10-3. The record lacks evidence the township or its police department had a policy or other form of directive, requiring police to refrain from enforcing the law in circumstances like the July 2016 incident. Therefore, there could be no retaliation by defendants where protected activity did not occur.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3036-22